**In re WINIMO REALTY CORP., et al., Debtors.**

**Cibro Petroleum Products, Inc., et al., Debtors in Possession, Plaintiffs,**

v.

**City of Albany, and Albany Port District Commission, Defendants.**

**Bankruptcy Nos. 92–B–40026(CB) to 92–B–40045(CB). No. 01M47(SAS). Adversary No. 9618730A.**

United States District Court, S.D. New York.

Oct. 25, 2001.

110

Paul N. Silverstein, Andrews & Kurth, LLP, New York City, for Plaintiffs.

Jeremy J.O. Harwood, Healy & Baillie, LLP, New York City, for Albany Port District Commission.

1. Additional background information may be found in the opinion of this Court in *Cibro Petroleum Products, Inc. v. City of Albany (In*

## MEMORANDUM DECISION

SCHEINDLIN, District Judge.

Defendant Albany Port District Commission ("APDC") appeals from an order of the Bankruptcy Court for the Southern District of New York denying its motion to compel arbitration of disputes arising under pre-petition contracts between debtor Cibro Petroleum Products, Inc. ("Cibro"), APDC and defendant City of Albany (the "City") and for a stay of proceedings pending arbitration. For the reasons stated below, the decision of the Bankruptcy Court is reversed.

## I. BACKGROUND [1]

Cibro is a company formerly engaged in refining, marketing, transporting, and distributing petroleum and asphalt products. *See* 4/5/01 Affidavit of Jeremy J.O. Harwood, Attorney for APDC ("Harwood Aff. No. 1") ¶ 4. APDC is a public corporation created by the State of New York in 1925, that facilitates trade and economic activities in the port districts of Albany and Rennsselaer, New York. *See id.* ¶ 2; 6/11/78 Lease Agreement, Ex. 1 to Harwood Aff. No. 1, at 1. Cibro operated a refinery at the Port of Albany ("Cibro Facility"). *See* Harwood Aff. No. 1 ¶ 4. The Cibro Facility was operated on property leased by Cibro from APDC.

Cibro filed for Chapter 11 relief on January 3, 1992. *See id.* ¶ 3. It has ceased operations and remains in bankruptcy pending confirmation of a reorganization plan. *See id.* ¶ 4.

### A. The APDC Leases

The Cibro Facility was leased from APDC pursuant to three long-term leases executed in 1978 and 1979 (the "Leases").

*re Winimo)*, 270 B.R. 99, 101–05 (S.D.N.Y. 2001).

*See id.* ¶ 5; Complaint ("Cibro's Complaint"), Ex. 7 to Harwood Aff. No. 1, ¶ 8. The Leases cover approximately thirty-three acres at the Port of Albany. *See* Brief of Defendant–Appellant APDC ("APDC Mem.") at 4. Among other things, the Leases have renewable options through the year 2055 and are each, by their specific terms, freely assignable by Cibro as lessee without approval by APDC. *See* Cibro's Complaint ¶ 10. Article 2 of the Leases provides for payment of taxes on the leased land and any property attached to the land. *See* APDC Mem. at 4. Each Lease also contains an identical, broadly-worded arbitration provision which reads, in relevant part: "Any controversy or claim arising out of or relating to this lease or the breach thereof ... shall be settled by arbitration . . . ." *See id.* at 5.

## B. The PILOT Agreement

In 1991, Cibro, the City, and APDC entered into an Agreement for Payments in Lieu of Taxes.[2] *See* Agreement for Payments in Lieu of Taxes ("PILOT Agreement"), Ex. C to Silverstein Aff.; Harwood Aff. No. 1 ¶ 11; Arbitration Decision at 3. Under the PILOT Agreement, Cibro was to make payments to the Comptroller of the City in lieu of City, County and School taxes on Cibro's leaseholds at the Port of Albany. *See* PILOT Agreement. This Agreement makes specific reference to the APDC Leases. *See id.* In 1994, Cibro discontinued making payments called for by the PILOT Agreement. *See* Silverstein Aff. ¶ 4; APDC Mem. at 6.

## C. The PILOT Adversary Proceeding

On June 19, 1996, Cibro filed an action against the City (the "PILOT Proceeding") seeking a declaratory judgment with respect to the enforceability of the PILOT Agreement and an accounting of all "payments in lieu of taxes" paid thereon. *See* Cibro's Complaint ¶ 5. APDC was not named as a defendant in that action. *See id.* In its complaint, Cibro seeks: (1) a declaration that the PILOT Agreement is void, *ab initio,* because there was no consideration from the City for the Agreement, *see id.* ¶¶ 24–26; or (2) alternatively, a declaration that the PILOT Agreement is voidable as a fraudulent conveyance and/or transfer pursuant to Section 273 of the New York Debtor & Creditor Law and Sections 544(a) and 548(b) of the Bankruptcy Code, *see id.* ¶¶ 28–32 (the "Avoidance Claim"); and (3) an accounting of all funds paid by Cibro under the PILOT Agreement, or "in lieu of taxes" since 1983, with interest thereon, *see id.* ¶¶ 37–42. In its complaint, Cibro asserts that the PILOT Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). *See id.* ¶ 7.

On July 18, 1996, the City filed an answer to Cibro's Complaint. *See* Debtor's Response to APDC's Motion for a Writ of Mandamus ("Mandamus Resp. Mem.") ¶ 11. On October 22, 1997, APDC intervened in the PILOT Proceeding to assert counterclaims. *See id.* On January 30, 1998, the Bankruptcy Court dismissed APDC's intervening complaint. *See id.* On March 23, 1998, the City and APDC filed an amended intervening answer with

---

**2.** This agreement was a "successor agreement" to a 1979 PILOT Agreement whereby Cibro agreed to make payments in lieu of real estate taxes. *In re Winimo Realty Corp., et al.,* No. 92–B–420026 (Decision of Cornelius Blackshear dated 1/27/99) ("Arbitration Decision"), Ex. 12 to Harwood Aff. No. 1, at 3; *see also* Agreement for Payment in Lieu of Taxes ("1979 PILOT Agreement"), Ex. B to 9/5/01 Affidavit of Paul N. Silverstein, Attorney for Plaintiff–Appellee, in Support of Plaintiff's Motion for Partial Summary Judgment ("Silverstein Aff."), Ex. A–3 to Counter Designation of the Record and Issues on Appeal by Appellee ("Cibro Counter Designation").

counterclaims. *See* Intervening Answer with Counterclaims ("APDC Answer"), Ex. A–1 to Cibro Counter Designation. In their Answer, the City and APDC assert that the payments called for by the PILOT Agreement are collateral obligations under the APDC Leases and that Cibro's failure to make these payments is a default of those leases (the "Breach Allegation").[3] *See* Harwood Aff. No. 1 ¶ 14.

### D. Cibro's 365 Motion

On or about March 2, 1998, Cibro filed a motion to assume the APDC Leases pursuant to section 365 of the Bankruptcy Code (the "365 Motion"). *See* Debtor's Motion for an Order Authorizing Assumption of Leases with APDC Pursuant to 11 U.S.C. § 365(a) ("Assumption Motion"), Ex. 8 to Harwood Aff. No. 1. As agreed upon by the parties in a hearing before the Bankruptcy Court, Cibro refiled this motion as a motion for partial summary judgment on June 15, 1998. *See* Debtor's Motion for an Order Granting Partial Summary Judgment ("Summ.Judg.Mot."), Ex. 10 to Harwood Aff. No. 1. Among other things, Cibro's motion requests a ruling on the Breach Allegation. Specifically, Cibro seeks an order declaring that its failure to make payments under the PILOT Agreement did not constitute a default under the APDC Leases. *See id.* ¶ 12.

APDC opposed Cibro's initial Assumption Motion and cross-moved on May 15, 1998, inter alia, for a stay and an order compelling arbitration of the Breach Allegation. Opposition and Notice of Cross–Motion by APDC, Ex. 9 to Harwood Aff. No. 1, ¶ 2. APDC subsequently opposed Cibro's refiled Summary Judgment Motion and cross-moved, on July 6, 1998, for a

stay and an order compelling arbitration of this matter. *See* Opposition and Notice of Cross–Motion by APDC ("Summ.Judg.Opp."), Ex. 12 to Harwood Aff. No. 1.

### E. Proofs of Claims

On May 12, 1998, the City filed two proofs of claim against Cibro. *See* Proofs of Claim ("City's Proofs of Claim"), Ex. 2 to Cibro Counter Designation. The City seeks more than two million dollars purportedly owed under the PILOT Agreement or, alternatively, taxes owed by Cibro from January 1, 1995 to the present. *See id.* A proof of claim was also filed by APDC, but was withdrawn on July 16, 1998, after APDC received the rental payments it sought. *See* APDC Mem. at 19; 7/22/98 Affidavit of J.O. Harwood ("Harwood Aff. No. 3") ¶¶ 14–16.

### F. The Bankruptcy Court's Refusal to Compel Arbitration

The Bankruptcy Court has refused to compel arbitration on three occasions. In its decision on Cibro's Summary Judgment Motion (the "Arbitration Decision"), the court held that the arbitration provisions in the Leases are enforceable and that the Breach Allegation "is arbitrable" but ordered mediation in lieu of arbitration "due to APDC's delay in invoking the arbitration clause." Arbitration Decision at 11–13. After mediation proved unsuccessful, APDC requested that the court, in line with the Arbitration Decision, now order arbitration of the issues previously subject to mediation. *See* Harwood Aff. No. 1 ¶ 37. At a hearing on January 24, 2001, the court acknowledged that it had found that the Breach Allegation was arbitrable, but again refused to enter an order com-

---

**3.** The APDC Leases require that Cibro remain current on its tax-related obligations. *See*

Mandamus Resp. Mem. ¶ 24.

pelling arbitration. *See* 1/24/01 Transcript, Ex. 15 to Harwood Aff. No. 1, at 36. The court explained that it would not enter such an order until after the court had tried the issues. *See id.* ("[Y]ou can go to arbitration after I have made my ruling."). The court then set a schedule for trial of the PILOT Proceeding. *See* 4/13/01 Transcript at 21.

On April 6, 2001, APDC filed an application for an Order to Show Cause requesting a writ of mandamus directing the Bankruptcy Court to compel arbitration and stay the proceedings pending arbitration. *See* APDC's Combined Application and Memorandum of Law in Support of its Order to Show Cause for a Writ of Mandamus ("Mandamus Mem."). In response, this Court issued a remand order directing the Bankruptcy Court to determine the following issues: (1) whether "the [PILOT] adversary proceeding is subject to arbitration," and (2) if the PILOT Proceeding is subject to arbitration, "whether such arbitration must proceed prior to the trial of the adversary proceeding." Order on APDC's Motion for Writ of Mandamus to Compel Arbitration ("Remand Order"), Ex. 17 to 7/01 Affidavit of Jeremy J.O. Harwood ("Harwood Aff. No. 2"), at 2.

On June 28, 2001, the Bankruptcy Court issued an opinion in response to the Remand Order. Decision on Remand by District Court to Consider Whether the Issues to be Tried are Arbitrable ("Remand Decision"), Ex. 25 to Harwood Aff. No. 2. In the Remand Decision, the Bankruptcy Court refused to compel arbitration of the PILOT Proceeding and to stay the Proceeding pending arbitration. *See id.* There were essentially three elements of the court's reasoning. *First,* the Court

found that the PILOT Proceeding was a "core proceeding." *Id.* at 4. The court reasoned that settlement of a dispute involving "enforcement of a contractual agreement between parties that filed proofs of claim against the Debtor ... is essential to the administration of the estate" and that "administering all property of the bankrupt's possession, is a core bankruptcy function ...." *Id.* (quotation marks omitted). *Second,* the court determined that "the underlying purpose of the Bankruptcy Code may adversely be affected by enforcing the arbitration provision." *Id.* at 5. *Third,* the court determined that an adversary proceeding would be a more "expeditious" means of resolving this matter. *Id.* Accordingly, the court ordered the matter scheduled for trial. *See id.*

The Bankruptcy Court provided further clarification of the Arbitration Decision and the Remand Decision in a Memorandum dated August 16, 2001.[4] *See In re Winimo Realty Corp., et al.,* No. 92-B-420026 (Memorandum of Cornelius Blackshear dated 8/16/01) ("Remand Memorandum"). In that Memorandum, the Bankruptcy Court stated that "while disputes under the PILOT Agreement would normally be subject to the Arbitration [Act] ... this Court has [decided] not to enforce the arbitration clause and to proceed with a trial on the merits." Remand Memorandum at 3. The Bankruptcy Court concluded that the disputes that have arisen under the PILOT Agreement—namely the Avoidance Claim and the Breach Allegation—fall within the arbitration clause of the Leases and are therefore "arbitrable" but exercised its discretion not to compel arbitration.

---

4. This Memorandum was issued in response to a second remand order from this Court requesting that the Bankruptcy Court clarify "whether it concludes that disputes arising under the PILOT Agreement are arbitrable." 8/14/01 Order ("Second Remand Order") at 2.

### G. The Divestiture Decision

On July 17, 2001, APDC moved before this Court for a stay of the Bankruptcy Court's proceedings pending appeal of the Bankruptcy Court's Remand Decision. *See* APDC's Combined Emergency Motion and Memorandum of Law in Support of APDC's Request for a Stay Pursuant to Bankruptcy Rule 8005 Pending Appeal ("Stay Mem."). Cibro opposed this motion on August 3, 2001. *See* Memorandum of Law in Opposition to APDC's Request for a Stay Pending Appeal ("Stay Opp."). On August 22, 2001, APDC filed a notice of appeal from the Bankruptcy Court's first Remand Decision and subsequent Remand Memorandum. *See* Notice of Appeal. On August 28, 2001, this Court held that APDC's filing of a notice of appeal divested the Bankruptcy Court of jurisdiction to try the PILOT Proceeding pending resolution of APDC's appeal. *See In re Winimo*, 270 B.R. at 108.

### III. LEGAL STANDARD

■ The issues raised in this appeal require different standards of review. The Bankruptcy Court's decision that the PILOT Proceeding is "core" is a matter of law that is subject to *de novo* review on appeal. *See Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum)*, 118 F.3d 1056, 1062, 1064 (5th Cir.1997). The question of whether a Bankruptcy Court has discretion to decline to compel arbitration is also a matter of law that must be reviewed *de novo*. *See In re Singer Co. N.V.*, No. 00 Civ. 6793, 2001 WL 984678, at *5 (S.D.N.Y. Aug.27, 2001). Assuming that the Bankruptcy Court has discretion, the exercise of that discretion is reviewable only for abuse. *See In re Serv. Marine Indus., Inc.*, No. Civ. A. 00–2344, 2000 WL 1673061, at *2 (E.D.La. Nov.3, 2000)

(citing *In re U.S. Lines, Inc.*, 197 F.3d 631, 640–41 (2d Cir.1999)).

### IV. DISCUSSION

#### A. Legal Standard for Enforcement of a Valid Arbitration Clause

■ The Federal Arbitration Act (the "FAA") provides, in pertinent part, that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). The FAA thus establishes a "federal policy favoring arbitration" and requiring that federal courts "rigorously enforce agreements to arbitrate." *Shearson/Am. Express*, 482 U.S. at 226, 107 S.Ct. 2332. It is well-settled that even "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647; *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 77 (2d Cir.1998). "In other words, the 'duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights.'" *Oldroyd*, 134 F.3d at 77 (quoting *Shearson/Am. Express*, 482 U.S. at 226, 107 S.Ct. 2332); *see also Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)("[E]ven claims arising under a statute designed to further important social policies may be arbitrated . . . .").

■ However, "[l]ike any statutory directive the Arbitration Act's mandate may be overridden by a contrary congressional command." *Shearson/Am. Express*, 482 U.S. at 226, 107 S.Ct. 2332; *see also Singer*, 2001 WL 984678, at *2; *Manshul*

*Constr. Corp. v. Schulman (In re Manshul)*, 225 B.R. 41, 47 (Bankr.S.D.N.Y. 1998). Congress "may override the presumption in favor of arbitration by manifesting its intention to do so." *Oldroyd*, 134 F.3d at 77. Such intent, if present, "'will be discoverable in the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute's] underlying purpose.'" *Id.* (quoting *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647); *see also U.S. Lines*, 197 F.3d at 639; *Singer*, 2001 WL 984678, at *2. The party opposing arbitration has the burden of proving that Congress evinced an intent "to limit or prohibit waiver of a judicial forum for [the] particular claim at issue." *Shearson/Am. Express*, 482 U.S. at 227, 107 S.Ct. 2332; *see also Oldroyd*, 134 F.3d at 78.

 The Second Circuit has recognized that a Bankruptcy Court has discretion to decline to compel arbitration when a conflict exists "between the Bankruptcy Code, which favors centralization of disputes concerning a debtor's estate, and the Arbitration Act, which advocates a decentralized approach to dispute resolution." *See In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir.2000) (citing *U.S. Lines*, 197 F.3d at 640–41). When faced with a motion to compel arbitration, a Bankruptcy Court must perform a two-stage inquiry. *First*, the court must determine whether it has discretion to refuse arbitration. *See Singer*, 2001 WL 984678, at *3. *Second*, if the Bankruptcy Court determines that it does have such discretion, the question "with respect to the exercise of that discretion is 'whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing [the] arbitration clause'." *Id.* (quoting *U.S. Lines*, 197 F.3d at 640).

In the first inquiry, the Bankruptcy Court must examine "whether the proceeding involves provisions of the [Bankruptcy] Code that so inherently conflict with arbitral resolution that" those provisions manifest "Congressional intent to grant the bankruptcy courts discretion to refuse arbitration ...." *Id.* at *3. Here, the Second Circuit has made a distinction between core and non-core proceedings. *See Crysen*, 226 F.3d at 166; *U.S. Lines*, 197 F.3d at 640; *Singer*, 2001 WL 984678, at *3. "[B]ankruptcy courts generally *do not* have discretion to *decline* to stay *non-core* proceedings in favor of arbitration." *Crysen*, 226 F.3d at 166. This is because non-core proceedings "are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration." *U.S. Lines*, 197 F.3d at 640 (citing *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1161 (3d Cir.1989)). In core proceedings, where "the interest of the bankruptcy court is greater," there may very well be a conflict between the Bankruptcy Code and the Arbitration Act. *Crysen*, 226 F.3d at 166. But "even a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration," for "not all bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code." *U.S. Lines*, 197 F.3d at 640. (quoting *Nat'l Gypsum*, 118 F.3d at 1067). Thus, when a proceeding is core, the bankruptcy court must still analyze whether arbitration of the proceeding would jeopardize Bankruptcy Code policy.

## B. Analysis

APDC provides three grounds for its contention that the Bankruptcy Court erred in declining to compel arbitration of

the PILOT Proceeding.[5] *First*, APDC argues that the Bankruptcy Court did not have discretion to deny arbitration of the PILOT Proceeding because that proceeding is not a core proceeding under the Bankruptcy Code. *Second*, APDC argues that, even if the PILOT Proceeding is a core proceeding, the Bankruptcy Court did not have discretion to deny arbitration because arbitration would not conflict with Bankruptcy Code policy. *Third*, APDC argues that, even if the Bankruptcy Court had discretion to deny arbitration, it abused that discretion.

### 1. Core Versus Non-core Proceedings

#### a. Legal Standard

 The Bankruptcy Code divides claims in bankruptcy proceedings into two principal categories, "core" and "non-core". *See* 28 U.S.C. § 157; *see also S.G. Phillips Constructors, Inc. v. City of Burlington*, 45 F.3d 702, 704 (2d Cir.1995).[6] "Core" proceedings are matters "arising under" the Bankruptcy Code or "arising in" bankruptcy cases. 28 U.S.C. § 157(b); *see also Singer*, 2001 WL 984678, at *2 n. 5. "Non-core" proceedings are "merely 'related-to' bankruptcy cases." *Id.* (quoting 28 U.S.C. § 157(c)).

 The Bankruptcy Code provides a non-exclusive list of core proceedings. *See* 28 U.S.C. §§ 157(b)(2)(A)-(O). However, some of the items listed in section 157(b) "are so broad that they could be construed to include almost any matter relating to bankruptcy." *Resolution Trust Corp. v. Best Products Co., Inc. (In re Best)*, 68 F.3d 26, 31 (2d Cir.1995)(quotation marks and citations omitted). Accordingly, the Second Circuit has insisted that a determination of whether a matter is core requires a further examination into "the nature of the proceedings." *Id.* In *U.S. Lines*, the Second Circuit established that "whether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." 197 F.3d at 637; *see also Luan Investment, S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, No. 95B44528, 2001 WL 826122, at *5 (S.D.N.Y. July 19, 2001).

 The first prong of the core/non-core inquiry is whether a contract was formed pre-petition or post-petition. *See U.S. Lines*, 197 F.3d at 637. The seminal case on pre-petition contract claims is *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct.

---

5. APDC emphasizes that it is appealing the Bankruptcy Court's denial of arbitration "both in respect of its motion to assume the 'APDC Leases' in the Partial Summary Judgment Motion and in the PILOT Adversary Proceeding." Reply Brief of Defendant–Appellant APDC ("APDC Rep.") at 1. APDC seeks to ensure that this Court reviews both the Bankruptcy Court's refusal to compel arbitration of the Breach Allegation and that court's refusal to compel arbitration of the PILOT Proceeding. Because the PILOT Proceeding is the only matter the Bankruptcy Court has sought to schedule for trial, *see* 4/13/01 Transcript at 21, and because that Proceeding will resolve both Cibro's claim regarding the validity of the PILOT Agreement and APDC's Breach Allegation, this

Court need not distinguish between the Bankruptcy Court's denial of arbitration in the Partial Summary Judgment Motion and in the PILOT Proceeding.

6. In "core" proceedings, Bankruptcy Courts have the authority to "hear and determine all [matters] ... and may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1); *see also Phillips Constructors*, 45 F.3d at 704. In "non-core" proceedings, "unless the parties consent, the Bankruptcy Court may only make recommended findings of fact and conclusions of law which are subject to *de novo* review in the district court." *Id.* (citing 28 U.S.C. §§ 157(c)(1)-(2)).

2858, 73 L.Ed.2d 598 (1982). In *Marathon*, the Supreme Court ruled that it is unconstitutional for "a bankruptcy court to adjudicate a state breach of contract claim brought by a debtor against a defendant who has not filed a claim with the Bankruptcy Court, when the contract was executed prior to the filing of the bankruptcy petition." *McMahon v. Providence Capitol Enter., Inc.*, 222 B.R. 205, 207 (S.D.N.Y.1998)(citing *Marathon*, 458 U.S. at 50, 102 S.Ct. 2858). "[F]ollowing *Marathon*, it is well-settled that [the Constitution] prohibits bankruptcy courts from adjudicating pre-petition contract claims— that is, claims arising prior to the commencement of the debtor's bankruptcy— against a nonparty to the bankruptcy." *Tultex Corp. v. Freeze Kids, L.L.C.*, 252 B.R. 32, 36 (S.D.N.Y.2000)(citing *Phillips Constructors*, 45 F.3d at 705). Accordingly, the Second Circuit has held that "a breach of contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core." *Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095, 1102 (2d Cir.1993); *see also Tultex*, 252 B.R. at 37 n. 8. However, where a defendant to a pre-petition contract action has filed a proof of claim against the estate, the defendant has "sought the benefits of the bankruptcy court's jurisdiction" and the matter will be

deemed core.[7] *Petrie Retail*, 2001 WL 826122, at *6; *see also In re Best*, 68 F.3d at 31–32 (holding that an action involving a pre-petition subordination agreement was core where the proceeding involved "the priority of rights of creditors who have filed claims against the estate."); *Phillips Constructors*, 45 F.3d at 705 (holding that bankruptcy court had core jurisdiction over creditor's proof of claim regarding a pre-petition contract where the claim arose under state law); *Pan Am. World Airways*, 132 B.R. at 7 ("When a creditor files a proof of claim it submits itself to the bankruptcy court's equitable power, and the claims, even though arising under state law, become core proceedings within the jurisdiction of the bankruptcy court."); *Miramar Res., Inc. v. Webb*, 176 B.R. 45, 53 (Bankr.D.Colo.1994) ("If a proof of claim has been filed by a creditor, all claims by the estate against the creditor become core matters . . . .").

The second prong of the core/ non-core inquiry "hinges on 'the nature of the proceeding'." *U.S. Lines*, 197 F.3d at 637 (quoting *Phillips Constructors*, 45 F.3d at 707). "Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function." *Id.* (citations omit-

---

7. The fact that a defendant, by filing a proof of claim, subjected itself to the Bankruptcy Court's equitable jurisdiction may by itself be a sufficient basis for finding a proceeding core. *See In re Caldor Corp.*, 217 B.R. 121, 128 (Bankr.S.D.N.Y.1998). In addition, courts have found that a proceeding against a party that has filed a claim against the estate may fall into one of the core matters explicitly listed in section 157. For example, the proceeding may effect the "allowance or disallowance of claims against the estate" pursuant to section 157(b)(2)(B), *see In re G.I. Indus., Inc.*, 204 F.3d 1276, 1279–80 (9th Cir. 2000); *Phillips Constructors*, 45 F.3d at 704; *Pan Am. World Airways, Inc. v. Evergreen Int'l*

*Airlines, Inc.*, 132 B.R. 4, 7 (S.D.N.Y.1991); *Mercury Masonry Corp. v. Terminal Construction Corp.*, 114 B.R. 35, 37 (Bankr.S.D.N.Y. 1990); it may effect "the administration of the estate" pursuant to section 157(b)(2)(O), *see Peachtree Lane Assoc., Ltd. v. Granader*, 175 B.R. 232, 238 (N.D.Ill.1994); *Mercury Masonry Corp.*, 114 B.R. at 37; or it may constitute a "counterclai[m] by the estate against persons filing claims against the estate" pursuant to section 157(b)(2)(C), *see, e.g., Leslie Fay Co.'s, Inc. v. Falbaum*, No. 97 Civ. 2244, 1997 WL 555607, at *2 (S.D.N.Y. Sept.4, 1997); *Lombard–Wall Inc. v. New York City Hous. Dev. Corp.*, 48 B.R. 986, 990– 91 (S.D.N.Y.1985).

ted). Core bankruptcy functions of particular importance to the instant proceeding include "matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), the "allowance or disallowance of claims against the estate," *id.* at § 157(b)(2)(B), administration of the debtor's estate, *see id.* at § 157(b)(2)(O); *U.S. Lines,* 197 F.3d at 637, claims for "administrative expense[s] pursuant to section 503(b)," *Anderberg–Lund Printing Co.,* 109 F.3d 1343, 1346 (8th Cir.1997); *see also, e.g., In re Westmoreland Coal Co.,* 221 B.R. 512, 515 (D.Colo.1998); *In re Radco Merchandising Svces., Inc.,* 111 B.R. 684, 686 (N.D.Ill.1990), and proceedings regarding the assumption or rejection of leases under section 365, *see, e.g., In re Resource Tech. Corp.,* 254 B.R. 215, 218 (N.D.Ill.2000); *Dunes Hotel Assoc. v. Hyatt Corp.,* 194 B.R. 967, 992–93 (Bankr. D.S.C.1995); *In re Texaco,* 77 B.R. 433, 436 (Bankr.S.D.N.Y.1987).

### b. Analysis

 The Bankruptcy Court held that the PILOT Proceeding was a core proceedings because APDC filed a proof of claim against the estate. *See* Arbitration Decision at 7; Remand Decision at 4. Citing the Second Circuit's decision in *In re Best,* the court explained that a bankruptcy court has core jurisdiction over a proceeding involving the " 'enforcement of a contractual agreement between parties that filed proofs of claim against the Debtor'." Remand Decision at 4 (quoting *In re Best,* 68 F.3d at 31); *see also* Arbitration Decision at 7. While the Bankruptcy Court did not cite to any of the non-exclusive items listed in section 157(b)(2), it did explain in the Remand Decision that the PILOT Proceeding directly affects a core bankruptcy function because settlement of this dispute is " 'essential to the administration of the estate'.". Remand Decision at 4 (quoting *In re Best,* 68 F.3d at 31–32).

Thus it appears that the Bankruptcy Court deemed the PILOT Proceeding core under section 157(b)(2)(A) ("matters concerning the administration of the estate").

APDC argues that the Bankruptcy Court erred because APDC has withdrawn its sole proof of claim against the estate. *See* APDC Mem. at 19, 29, 31–33. While APDC is correct, the PILOT Proceeding is nevertheless "core" because the City, APDC's codefendant, filed proofs of claim against the estate that have not been withdrawn. *See* Cibro's Proofs of Claim. The City is the original defendant in this Proceeding and the only defendant against whom relief and damages are sought. *See* Cibro's Complaint. APDC, by contrast, intervened in the proceeding and is only a nominal party to the action.

The City's filing of proofs of claims triggered the Bankruptcy Court's core jurisdiction for three reasons. *First,* by filing a proof of claim against the estate, the City "brought [itself] within the equitable jurisdiction of the bankruptcy court" and conferred core jurisdiction on the Bankruptcy Court over this proceeding. *Peachtree Lane Assoc.,* 150 F.3d 788, 798 (7th Cir.1998). *Second,* the City's proof of claim triggered the Bankruptcy Court's core jurisdiction under section 157(b)(2)(B). The City's proof of claim seeks payments allegedly due under the PILOT Agreement and the PILOT Proceeding will determine if that Agreement is valid and whether Cibro breached that agreement. Because the PILOT Proceeding "arises out of the same transaction as the proofs of claim" and "adjudication of this matter will require consideration of the issues raised by the proofs of claim," *Leslie Fay,* 1997 WL 555607, at *2, resolution of the PILOT Proceeding will result in the "allowance or disallowance of claims against the estate," 28 U.S.C. § 157(b)(2)(B); *see also Phillips Construc-*

*tors*, 45 F.3d at 704; *In re G.I. Indus., Inc.*, 204 F.3d at 1279–80; *Pan Am. World Airways*, 132 B.R. at 7; *Mercury Mason-ry Corp.*, 114 B.R. at 37. *Third*, the Bankruptcy Court has core jurisdiction under section 157(b)(2)(O). Cibro's interest in the Leases is the single biggest asset of the bankruptcy estate that remains to be liquidated. *See* Cibro's Supplemental Letter Brief at 2–3. Cibro has sought to assume these Leases under section 365 so that it may assign the Leases and thereby realize value for the benefit of its creditors. *See id.* at *3. APDC's opposition to the 365 Motion is based on its Breach Allegation, which will be resolved in the PILOT Proceeding. As a result, the PILOT Proceeding will significantly affect "the liquidation of the assets of the estate." 28 U.S.C. § 157(b)(2)(O); *see also In re Hemphill Bus Sales*, 259 B.R. 865, 870 (Bankr.E.D.Tex.2001) (finding pre-petition contract dispute core where outcome would determine whether contract could be assumed or rejected under section 356).

APDC argues that case law involving parties who filed proofs of claim against the estate is inapplicable here because the City actually filed a claim for an administrative expense, not a proof of claim. *See* APDC Rep. at 13. APDC insists that, although the City used the form for a "Proof of Claim," its claims were more accurately described as claims for administrative expenses because the bar date for filing proofs of claims had already expired and the City's claims were filed in order to meet an administrative bar date order. *See id.* It then explains that there is a "fundamental distinction" between the filing of an administrative expense claim and the filing of a proof of claim because ad-

ministrative expenses must be requested and approved by the Bankruptcy Court. *Id.* at 13–14. According to APDC, this "fundamental distinction," plus the fact that the City's claims were filed after Cibro commenced the PILOT Proceeding, make the cases regarding proofs of claims inapplicable. *See id.*

■■■ A finding that the City's purported "proofs of claim" were in fact claims for administrative expenses would not alter the conclusion that this is a core proceeding. Although administrative claims do not enjoy the same presumption of validity and accuracy as proofs of claim, *see In re Allen Care Centers, Inc.*, 163 B.R. 180, 181 (Bankr.D.Or.1994), a party claiming an administrative expense is entitled to priority over all unsecured creditors, *O'Neill v. New England Road, Inc.*, No. 3:99MC309, 2000 WL 435507, at *7 (D.Conn. Feb.28, 2000) (citing 11 U.S.C. § 507(a)(1)). Regardless of when the claims are made, "they are still claims against the debtor's estate and hence seek a piece of the res under the equitable jurisdiction of the bankruptcy court." *Id.* Thus, "[r]esolution of post-petition [administrative expense] claims are as much a function of the bankruptcy court's equitable apportionment of the estate as resolution of pre-petition [proofs of] claims." *Id.*

■■■ It is also irrelevant that the City filed its claims after Cibro initiated the PILOT Proceeding.[8] As the Seventh Circuit has noted, "nothing [ ] suggests that it makes any difference whether the filing of the adversary proceeding precedes or follows the submission of a claim against the bankruptcy estate. In either case, the

---

8. The timing of the City's claim is only relevant to the extent that it refutes Cibro's suggestion that the PILOT Proceeding could be deemed core under section 157(b)(2)(C). *See* Cibro Opp. at 7, 9. Clearly, an adversary

proceeding filed against a defendant before the defendant files its claim against the estate cannot be construed as a "counterclai[m] by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C).

submission of the claim still would trigger the process of allowance and disallowance of claims, thereby subjecting the claimant to the bankruptcy court's equitable jurisdiction." *Peachtree Lane Assoc., Ltd.,* 150 F.3d at 797 (citing *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curium); *Travellers Int'l AG v. Robinson,* 982 F.2d 96, 100 n. 14 (3d Cir.1992); *In re Hooker Inv., Inc., L.J.,* 937 F.2d 833, 838–39 (2d Cir.1991)).

[35] Finally, even if the cases involving proofs of claim are not applicable, the PILOT Proceeding is still a core matter because it "directly affect[s] a core bankruptcy function." [9] *U.S. Lines,* 197 F.3d at 637. A claim for an administrative expense and a proceeding regarding the assumption or rejection of leases under section 365 are both core matters. *See, e.g., Anderberg–Lund Printing Co.,* 109 F.3d at 1346 (administrative expense claim); *In re Westmoreland Coal Co.,* 221 B.R. at 515 (same); *In re Resource Tech. Corp.,* 254 B.R. at 218 (section 365 proceeding); *Dunes Hotel Assoc.,* 194 B.R. at 992–93 (same); *In re Texaco,* 77 B.R. at 436 (same). By determining the validity of the PILOT Agreement and resolving the Breach Allegation, the PILOT Proceeding will directly affect the City's administrative expense claim and Cibro's 365 Motion. Therefore, the PILOT Proceeding will "directly affect" core proceedings. *U.S. Lines,* 197 F.3d at 637.

## 2. The Bankruptcy Court's Discretion to Deny Arbitration

APDC's second argument is that, even if the PILOT Proceeding is core, the Bankruptcy Court improperly determined that it had discretion to proceed to trial rather than compel arbitration. Because there is no evidence that arbitration of the PILOT Proceeding would jeopardize an underlying policy of the Bankruptcy Code, the Bankruptcy Court lacked the discretion to proceed to trial.

### a. Legal Standard

■ In a core proceeding, a Bankruptcy Court has discretion not to enforce an arbitration clause where arbitration "would seriously jeopardize the objectives of the [Bankruptcy] Code." *U.S. Lines,* 197 F.3d at 640 (quotations omitted). The Second Circuit has not enunciated a clear standard for determining when a core matter presents so inherent a conflict that the Bankruptcy Court has discretion to refuse to compel arbitration. In *U.S. Lines,* the Second Circuit's determination that such a conflict existed was based on the particular claims and circumstances of that case.[10] *See id.* at 641.

■ However, as Judge Laura Taylor Swain recently suggested in *Singer,* the analytical framework in the Fifth Circuit's *Nat'l Gypsum* decision can help determine if a core matter presents so inherent a

---

9. APDC contends that Cibro has conceded that the PILOT Proceeding would not be a core matter absent the City's filing a proof of claim. *See* APDC Rep. at 12. Nothing in Cibro's memoranda of law indicate such a concession.

10. *U.S. Lines* involved a motion to compel arbitration of a number of declaratory judgment proceedings regarding insurance policies which were the only potential source of cash available to personal injury creditors. *See* 197 F.3d at 638–41. Given the integral

relationship between the declaratory judgment proceedings and the Bankruptcy Court's administration of the estate, the complex factual scenario, involving multiple claims, policies and insurers, and the general preference for bankruptcy court as the "venue in which to handle mass tort actions involving claims against an insolvent debtor," the Second Circuit held that the Bankruptcy Court did not err in finding that arbitration of the proceedings would jeopardize the policies and purposes of the Bankruptcy Code. *Id.* at 653.

conflict as to permit the Bankruptcy Court to exercise its discretion to deny arbitration.[11] *See Singer*, 2001 WL 984678, at *4 (citing *Nat'l Gypsum*, 118 F.3d at 1067–70). Under the Fifth Circuit's framework, when the underlying dispute is premised on rights created by the Bankruptcy Code, the Bankruptcy Court has discretion to assess whether arbitration would actually conflict with the purposes of the Bankruptcy Code. *See id.* Where the underlying dispute concerns non-Bankruptcy Code issues derivative of the debtor's pre-petition business activities, no such discretion exists. *See id.* Thus, under *U.S. Lines* and *Nat'l Gypsum*, this Court is charged with the task of discerning whether the PILOT Proceeding "presents issues premised on provisions of the Bankruptcy Code whose purposes conflict inherently with the arbitration policy" of the FAA. *Id.* at *5.

### b. Analysis

▆▆▆▆ In refusing to compel arbitration, the Bankruptcy Court concluded that the PILOT Proceeding would effect an important bankruptcy consideration because "the determination of this matter is essential to administering [Cibro's] estate." Remand Decision at 5. Quoting *U.S. Lines*, the court then concluded that, because "the underlying purpose of the Bankruptcy Code may adversely [be] affected by enforcing the arbitration clause," the court could "exercise discretion in determining whether or not to enforce an arbitration clause." *Id.* Nowhere did the Bankruptcy Court explain *how* arbitration of the PILOT Proceeding would adversely affect the administration of Cibro's estate or conflict with Bankruptcy Code policy. A close reading of the opinion reveals that the only conflict the Bankruptcy Court alluded to was that the delay associated with arbitration would conflict with the Code's underlying policy of "expeditious" administration of the estate. *Id.*

The factors cited by the Bankruptcy Court are insufficient to support a finding that it had discretion to refuse to compel arbitration of the PILOT Proceeding. First, the issues underlying the PILOT Proceeding "do not arise from rights conferred or obligations imposed by the Bankruptcy Code." *Singer*, 2001 WL 984678, at *6. Therefore, "they do not, standing alone, present an inherent conflict between [Bankruptcy] Code policy and the FAA's endorsement of the arbitral forum." *Id.* Cibro's claims allege that the PILOT Agreement is void for lack of consideration or voidable as a fraudulent conveyance and/or transfer. *See* Cibro's Complaint at ¶¶ 28–32, 27–42. In its Breach Allegation, APDC claims that Cibro has breached the terms of the Leases by failing to meet its payment obligations under the PILOT Agreement. *See* Harwood Aff. No. 1 ¶ 14. None of these claims was created by the Bankruptcy Code; they are simply contractual claims derivative of pre-bankruptcy agreements.[12]

---

**11.** In the Divestiture Decision, this Court noted that, in *U.S. Lines*, the Second Circuit "did not adopt the Fifth Circuit's approach when it had a chance to do so." *See In re Winimo*, 270 B.R. at 107 n. 9. That statement specifically referred to the Fifth Circuit's holding that whether or not a Bankruptcy Court has discretion not to compel arbitration is not based on the core/non-core determination. *See id.* As noted above, the Second Circuit considers the core/non-core distinction in-structive, if not dispositive, on the issue of whether such discretion exists.

**12.** Cibro does invoke sections of the Bankruptcy Code when it alleges that the PILOT Agreement is voidable as a fraudulent conveyance and/or transfer pursuant to Section 273 of the New York Debtor & Creditor Law and Sections 544(a) and 548(b) of the Bankruptcy Code. *See* Cibro's Complaint ¶¶ 28–32. However, the Supreme Court has explicitly stated that "fraudulent conveyance actions by bank-

Nor does the policy favoring expeditious administration of the estate present a sufficient conflict to give the Bankruptcy Court discretion to refuse to compel arbitration. "A paramount objective of bankruptcy proceedings [is] the expeditious administration" of the estate. *In re Cartridge Television, Inc.,* 535 F.2d 1388, 1391 (2d Cir.1976) (quotation marks omitted); *see also Nat'l Gypsum,* 118 F.3d.at 1070 n. 21 ("Efficient resolution of claims [is an] integral purpos[e] of the Bankruptcy Code."). Therefore, in bankruptcy cases, timing concerns "may well present legitimate considerations" in determining whether the FAA's policy in favor of arbitration should be overridden.[13] *Nat'l Gypsum,* 118 F.3d at 1070 n. 21; *see also In re Hemphill,* 259 B.R. at 872 n. 15. Nevertheless, there are two reasons why the Bankruptcy Court's efficiency concerns did not give it discretion to refuse arbitration in this case. *First,* a substantial part of the delay in this matter was caused by the Bankruptcy Court itself. As the Bankruptcy Court noted, some delay resulted from APDC's failure to invoke the arbitration clause at the outset of the litigation. *See* Arbitration Decision at 12. However, there was nearly a six month delay between the date when the Bankruptcy Court held hearings on the issue of arbitrability and the date that court issued its Arbitration Decision, and subsequent court-ordered mediation delayed the proceedings for yet another year. *See* APDC Mem. at 46. Where most of the delay is attributable to the Bankruptcy Court, that court cannot then use that delay as justification for overriding the strong federal policy in favor of arbitration.

*Second,* the Bankruptcy Court's holding creates an exception that swallows the rule limiting that court's discretion to deny arbitration. The Second Circuit has made it clear that bankruptcy courts do not have discretion to deny arbitration in every core matter, because not every core matter presents a sufficient conflict between the Bankruptcy Code and the FAA. *See U.S. Lines,* 197 F.3d at 639. But, under the Bankruptcy Court's reasoning, the simple declaration that arbitration *might* be slower than trial creates a conflict that would allow the court to exercise such discretion in every case. If the presumption in favor of arbitration means anything, the mere possibility of delay cannot alone provide the Bankruptcy Court with discretion to deny arbitration. *Cf. Hays & Co.,* 885 F.2d at 1159 (holding that the "potential" for "inefficient delay" was not "substantial enough to override the policy favoring arbitration."); *In re Transp. Assoc., Inc.,* 263 B.R. 531, 536–37 (Bankr.W.D.Ky.2001) ("[D]elay and expense associated with the arbitration itself are insufficient reasons to deny arbitration.") (citing *Gen'l Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.,* 427 F.2d 924 (5th Cir.1970)); *In re Hemphill Bus Sales,* 259 B.R. at 872 n. 15 ("[D]elay

---

ruptcy trustees ... constitute no part of the proceedings in bankruptcy but concern controversies arising out of it." *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 55, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (quotation marks omitted). Therefore, the Court has held, such claims "are quintessentially suits at common law" that "resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate." *Id.*

**13.** APDC argues that the Bankruptcy Court may not take into consideration "timing" issues when determining whether it has discretion not to compel arbitration. *See* APDC Mem. at 48–49. To support its contention, APDC cites only non-bankruptcy cases that are inapplicable in the bankruptcy context. *See id.* (citing *C. Itoh & Co. (Am.) Inc. v. Jordan Int'l Co.,* 552 F.2d 1228, 1231 (7th Cir.1977); *Schulman Inv. Co. v. Olin Corp.,* 458 F.Supp. 186, 189 (S.D.N.Y.1978)).

becomes another meaningful (but not dispositive) factor.").

## V. CONCLUSION

Because arbitration of the PILOT Proceeding would not jeopardize an underlying purpose of the Bankruptcy Code, the Bankruptcy Court lacked discretion to refuse to compel arbitration of that Agreement. Accordingly, the Bankruptcy Court's decision denying APDC's motion to compel arbitration and stay the proceedings pending arbitration is reversed and the case is remanded for further proceedings consistent with this decision.[14]

SO ORDERED:

---

14. Cibro argues that, even if the Bankruptcy Court lacked discretion to deny arbitration, the PILOT Proceeding should not be sent to arbitration because neither the PILOT Agreement nor Cibro's payments under that Agreement are covered by the arbitration clause in the Leases. *See* Cibro Rep. at 12. The Bankruptcy Court specifically held that the arbitration clauses in the Leases extend to the PILOT Agreement and Cibro did not appeal that holding. *See* Arbitration Decision at 11; Remand Memorandum at 3. Cibro's argument is beyond the scope of this appeal.