### In re WINIMO REALTY CORP., et al., Debtors.

### Cibro Petroleum Products, Inc., et al., Debtors in Possession, Plaintiffs,

### v.

### City of Albany, and Albany Port District Commission, Defendants.

Bankruptcy Nos. 92–B–40026 (CB) to 92–B–40045 (CB).
District No. 01 M 47(SAS).
Adversary No. 9618730A.

United States District Court,
S.D. New York.

Dec. 5, 2001.

---

Paul N. Silverstein, Andrews & Kurth, LLP, New York City, for Plaintiffs.

Jeremy J.O. Harwood, Healy & Baillie, LLP, New York City, for Defendant Albany Port District Commission.

## MEMORANDUM DECISION

SCHEINDLIN, District Judge.

### I. INTRODUCTION

Appellee Cibro Petroleum Products, Inc. ("Cibro") moves pursuant to Fed.R.Civ.P. 59(e) to alter this Court's judgment in *In re Winimo Realty Corp. (Cibro Petroleum Products, Inc. v. City of Albany)*, 270 B.R. 108 (S.D.N.Y.2001) (*"In re Winimo II"*). For the reasons stated below, the motion is denied.

### II. BACKGROUND

On October 25, 2001, this Court reversed the decision of the Bankruptcy Court for the Southern District of New York which denied the Albany Port District Commission's ("APDC") motion to compel arbitration of an adversary proceeding (the "PILOT Proceeding") and for a stay of that proceeding pending arbitration. *See In re Winimo II*, 270 B.R. at 126. Familiarity with the facts presented and the terms used in that decision is assumed.

*In re Winimo II* held that, once the Bankruptcy Court determined that the arbitration clause contained in the Leases (the "Lease Arbitration Clause") extended to issues arising under the PILOT Agreement, it lacked discretion to deny arbitration of the PILOT Proceeding. *See id.* at 116–17, 126. On November 6, 2001, Cibro moved to alter that judgment pursuant to Fed.R.Civ.P. 59(e). *See* Memorandum of Law of Plaintiff–Appellee Cibro to Alter the Court's Judgment Pursuant to Fed. R.Civ.P. 59(e) ("Mot. Alt. Judg."). In an Order dated November 7, 2001, the Court stated that it would consider Cibro's motion because footnote fourteen of *In re Winimo II* was mistaken.[1] *See* November

---

1. Cibro also argued that this Court was mistaken when it stated that the Bankruptcy Court held that the PILOT Proceeding fell within the scope of the Lease Arbitration Clause. *See* Mot. Alt. Judg. at 3–6. The

7th Order. Contrary to the Court's statement in that footnote, Cibro was not required to file a cross-appeal before arguing that the Bankruptcy Court's decision to deny arbitration could be upheld based on a finding that the Bankruptcy Court erred when it concluded that the Lease Arbitration Clause extends to the PILOT Proceeding.[2] *Id.* On November 21, 2001, APDC moved for reconsideration of the November 7th Order on the grounds that: (1) Cibro was seeking not only to defend the Bankruptcy Court's judgment but to "reverse" that judgment, thereby enlarging the scope of its own rights or lessening APDC's rights thereunder; and (2) "Cibro would not, in any event, have been entitled to cross-appeal" the relevant portion of the Bankruptcy Court's decision as of right. Appellant APDC's Motion for Reconsideration of the Court's November 7, 2001 Order ("Mot. for Reconsideration").

## III. STANDARD OF REVIEW

█ The Bankruptcy Court's ruling regarding the scope of the Arbitration Clause is reviewed *de novo.  See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 223 (2d Cir.2001).

## IV. LEGAL STANDARD

██ Because the Federal Arbitration Act ("FAA") expresses "a liberal federal policy favoring arbitration agreements," there is a general rule that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). In

*Louis Dreyfus Negoce,* the Second Circuit established a three-part inquiry for determining whether a particular dispute falls within the scope of an agreement's arbitration clause. 252 F.3d at 224. *First,* a court must classify the arbitration clause as broad or narrow. *Second,* if the clause is narrow, "the court must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Id.* (quoting *Rochdale Vill., Inc. v. Pub. Serv. Employees Union,* 605 F.2d 1290, 1295 (2d Cir.1979)). "Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." *Id. Third,* if the arbitration clause is broad, " 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it'." *Id.* (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,* 58 F.3d 16, 23 (2d Cir. 1995)).

## V. DISCUSSION

### A. The Arbitration Clause is Broad

██ An arbitration clause is broad if "the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause." *Louis Dreyfus Negoce,* 252 F.3d at 225. It is narrow if the language indicates that "arbitration was designed to play a more limited role in any future disputes." *Id.*

---

Court declined to consider this argument. *See* 11/7/01 Order ("November 7th Order").

**2.** Footnote fourteen stated that, because Cibro did not appeal the Bankruptcy Court's hold-

ing that the Lease Arbitration Clause extends to the PILOT Agreement, this "argument [was] beyond the scope of [that] appeal." *In re Winimo II,* 270 B.R. at 126 n. 14.

■ The Lease Arbitration Clause states, in relevant part: "Any controversy or claim arising out of or relating to this lease or the breach thereof ... shall be settled by arbitration ...." Memorandum of Law of Plaintiff–Appellee Cibro ("Cibro Mem.") at 12 n.3; Opposition of Appellant APDC to Appellee Cibro's Motion to Alter Judgment ("APDC Opp.") at 4. In *Mehler v. Terminix Int'l Co.*, 205 F.3d 44 (2d Cir.2000), the Second Circuit described a virtually identically worded arbitration clause as a "classically broad one" that is " 'precisely the kind of broad arbitration clause that justifies a presumption of arbitrability.' " *Id.* at 49 (quoting *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir.1998)); *see also WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 75 (2d Cir.1997) (similar clause was "typically broad"); *Collins*, 58 F.3d at 18 (similar clause was broad); *Wilson v. Subway Sandwiches Shops, Inc.*, 823 F.Supp. 194, 198 (S.D.N.Y. 1993) (similar clause was "clearly broad in nature"). Therefore, the Lease Arbitration Clause is unquestionably broad.

## B. The PILOT Proceeding is Within the Scope of the Arbitration Clause

■ Because the Lease Arbitration Clause is broad, there is a presumption of arbitrability, and the burden shifts to "the party resisting arbitration to demonstrate that the disputed issue is collateral" to the Lease. *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir.1983). But even if the disputed issue is collateral, the matter will be arbitrated if it "implicate[s] issues of contract construction or the parties' rights and obligations under" the Leases. *Louis Dreyfus Negoce*, 252 F.3d at 228–29.

■ First, the Court must determine if the PILOT Agreement is a collateral agreement. "[F]or purposes of arbitra-

tion, a collateral agreement is 'a separate, side agreement, connected with the principal contract which contains the arbitration clause.' " *Id.* at 228 (quoting *Prudential Lines*, 704 F.2d at 64). Cibro correctly points out that the PILOT Agreement has several attributes of a collateral agreement. The Agreement was entered into subsequent to the Leases, was made between different parties, and was not specifically incorporated by or referenced by the Leases. *See* Cibro Mem. at 12; *Louis Dreyfus Negoce*, 252 F.3d at 228. Nor do the Leases require that Cibro, as lessee, enter into an agreement for payment in lieu of taxes. *See* Memorandum of Plaintiff–Appellee Cibro in Response to APDC's Opposition to Motion to Alter Judgment ("Cibro Repl.") at 5; *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 88 F.Supp.2d 168, 174 (S.D.N.Y.2000) (citing *Fairmont Shipping (H.K.), Ltd. v. Primary Indus. Corp.*, No. 86 Civ. 3668, 1988 WL 7805, at *4 (S.D.N.Y. Jan. 25, 1988), *aff'd*, 940 F.2d 649 (2d Cir.1991)). Nevertheless, the PILOT Agreement is not a typical collateral agreement because it is inextricably related to the Leases.

Article Two of the Leases explicitly provides that the lessee, *i.e.* Cibro, will pay taxes on the leased land and any property attached to that land. *See* Lease, Ex. 3 to 4/5/01 Affidavit of Jeremy J.O. Harwood, attorney for APDC ("Harwood Aff. No. 1"), at 3–4. The PILOT Agreement allows Cibro to make payments to the Comptroller of the City in lieu of certain taxes levied on parcels held pursuant to these Leases. *See* Agreement for Payments in Lieu of Taxes ("PILOT Agreement"), Ex. 4 to Harwood Aff. No. 1. Thus, the payments called for in the PILOT Agreement—and disputed in the PILOT Proceeding—are simply substitutes for the tax obligations imposed upon Cibro by the Leases. Furthermore, the PILOT Agree-

ment incorporates the Leases by reference. The Agreement makes specific reference to the "Lease Agreement[s]" and contains three paragraphs describing the Leases. *Id.* In addition, it states that the Agreement will be in effect "for as long as the [parcels] shall be leased by [Cibro] or its successors or assigns from [APDC] *pursuant to the terms of said leases ...."* *Id.* (emphasis added). Because the PILOT Agreement is interrelated to the Leases and "explicitly incorporate[s]" terms of the Leases, it is not a collateral agreement. *Fairmont Shipping,* 1988 WL 7805, at *4.

▪ Even if the PILOT Agreement were deemed a collateral agreement, the PILOT proceeding would nevertheless fall within the scope of the Lease Arbitration Clause. Under the Second Circuit's "expansive" test for a broad arbitration clause, a court must "test the presumption of arbitrability associated with a broad arbitration clause by asking whether claims ... under a collateral agreement implicate issues of contract construction" with respect to the main agreement containing the arbitration clause or implicates "the parties' rights and obligations under" the main agreement. *Id.* at 228–29 (quotation marks omitted). To make this determination, a court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir.1987).

In the PILOT Proceeding, Cibro seeks to avoid payments called for under the PILOT Agreement by requesting a declaratory judgment that the PILOT Agreement is void, *ab initio,* for lack of consideration or voidable as a fraudulent conveyance or transfer. *See In re Winimo II,* 270 B.R. at 114–15. Specifically, Cibro claims that it "had no legal obligation" to make payments in lieu of taxes to any party and that "the Leases do not require [Cibro] to make payments to any person 'in lieu of taxes'." Complaint, Ex. 7 to Harwood Aff. No. 1, ¶¶ 16–17. Thus, it is difficult to see how a court could forgo any consideration of Cibro's duties under the Leases when resolving the disputes at issue in the PILOT Proceeding.

It is also likely that the PILOT Proceeding will affect the outcome of the 365 Matter, thus implicating APDC's rights and Cibro's obligations under the Leases. In the 365 Matter, Cibro has moved to assume the Leases pursuant to Section 365 of the Bankruptcy Code. *See In re Winimo II,* 270 B.R. at 114–15. APDC has opposed this motion, contending that payments called for by the PILOT Agreement constitute taxes or related charges under the Leases and that Cibro's failure to make these payments is a default of those Leases (the "Breach Allegation"). *See id.; In re Winimo Realty Corp. (Cibro Petroleum Products, Inc. v. City of Albany),* 270 B.R. 99, 101–02 (S.D.N.Y.2001) (*"In re Winimo I"*). Thus, if it is determined in the PILOT Proceeding that the PILOT Agreement is invalid, the outcome of the PILOT Proceeding will surely affect APDC's claims in the 365 Matter.[3]

Because the allegations underlying the claims in the PILOT Proceeding "touch matters" covered by the Leases and will likely implicate APDC's rights and Cibro's obligations under those Leases, the disputes in the PILOT Proceeding are within the scope of the Lease Arbitration Clause. *Mehler,* 205 F.3d at 49 (quoting *Collins,* 58

---

**3.** Cibro correctly points out that a ruling on the Breach Allegation would not resolve the issues presented in the PILOT Proceeding. *See* Reply Mem. at 2–3. But Cibro is incor-

rect when it suggests that the PILOT Proceeding "would decide nothing for the purposes of the 365 Motion." *Id.* at 4.

F.3d at 21); *see also Oldroyd,* 134 F.3d at 77.

## V. CONCLUSION

For the foregoing reasons, the Bankruptcy Court did not err when it concluded that the Lease Arbitration Clause extends to the PILOT Proceeding. Accordingly, Cibro's motion to alter the judgment in *In re Winimo II* is denied. APDC's motion to reconsider the November 7th Order is also denied.

SO ORDERED.