GOVERNOR CLINTON CO., Inc., v. KNOTT
et al.

No. 288.

Circuit Court of Appeals, Second Circuit.

June 4, 1941.

150

The property of the debtor had been for more than three years under the joint management of a bondholders' committee and of respondents Cantor, Gabbe, and Gladstone, respectively debtor's president, treasurer, and attorney, but during that time had never earned enough to cover taxes or interest on its bonds. Consequently the bankruptcy court, as a condition to continuing it in possession, required the debtor to execute a contract with the respondent Knott Management Corporation giving the latter substantial control over the operation of the debtor's property in return for 3 per cent of the debtor's gross revenues, payable only if the property earned enough to meet its tax liabilities. Such contract, terminable by the debtor on 60 days' notice, was approved by a court order of July 31, 1935. Pursuant to the contract, the Management Corporation successfully operated the property from August 1, 1935, until March 26, 1937, while the debtor was in possession, and from the latter date, when a trustee was appointed, until December 15, 1937, when reorganization was completed. It received therefor each month sums aggregating $99,347.11— $66,008.71 before, and $33,338.40 after, the trustee's appointment. Petitioner herein, Governor Clinton Co., Inc., succeeded to the property of the debtor by an order of confirmation of the reorganization made on December 2, 1937.

One-third of the sum received by the Management Corporation each month was paid by it through its holding company to Gabbe, and was by him divided with Cantor and Gladstone. None of these payments were ever reported, or in any way made known, to the court. It is the refund of these payments which was ordered below on the ground of "a fraud perpetrated upon this Court," and which is the subject of appeal. Respondents, appellants herein, urge objections here both on the merits and to the jurisdiction of the bankruptcy court, as well as to the right of petitioner to receive the repayment.

We may dispose of the latter point at once. We are clear that respondents' objection to a demand by the debtor's successor instead of by its trustee, on the ground that the former represents only the debtor's bondholders, the latter all the creditors, cannot prevail. It is true that the December 2, 1937, order reserved jurisdiction to authorize suits by the trustee in behalf of the general creditors, and that

James Madison Blackwell, of New York City (Blackwell Bros., of New York City, on the brief), for petitioner-appellee.

Nathan L. Miller, of New York City (Krause, Hirsch & Levin, George C. Levin, and James Nevins Hyde, all of New York City, on the brief), for respondents-appellants David H. Knott and Knott Management Corporation.

Aaron William Levy, of New York City, for respondent-appellant Gabbe.

David Kugel, of New York City, for respondent-appellant Cantor.

Charles E. McMahon, of New York City, for respondent-appellant Gladstone.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

A voluntary petition for a reorganization of Hotel Governor Clinton, Inc., under the then Bankruptcy Act, § 77B, 11 U.S.C.A. § 207, was filed June 14, 1935.

no such authority has been granted. But the same order vested in this petitioner "all other property of the Debtor and the Trustee of the Debtor, except as herein or in the Plan otherwise provided * * * free and clear of all claims of creditors of the Debtor, and all other claims and liens except as provided in the Plan and this Order"; and it also required the Management Corporation, after accounting to the court, "to turn over to the New Corporation any and all moneys and proceeds in its hands which it may have received under and pursuant to the terms of the Management Agreement." All evidence relevant to the point indicates that the bondholders who received an interest in petitioner were not paid in full. Since the present claims arise out of the operation of mortgaged property subsequent to the § 77B petition, the realization of them is the bondholders' right, as was clearly recognized in the quoted order of transfer, and the successor corporation is the proper party to assert them. The trustee was made a party below and has not appealed from the adjudication that he is not entitled to the refund.

Petitioner claims that respondent David Knott, chairman of the board of the Management Corporation, conspired with the other individual respondents to obtain the management contract and a remuneration thereunder which would enable the Management Corporation to pay one-third to Gabbe, Cantor, and Gladstone for their co-operation. The making of such payment is undisputed. The only other explanation at all plausible is that Knott feared that the Jewish fur trade clientele would be lost without the presence of Gabbe, who was personally acquainted with it, and who could ward off supposed charges of anti-Semitism. But the inference claimed by petitioner is the more probable by reason of several other circumstances. Gabbe described his value as an ability to suggest economies of operation even to this experienced management concern and notwithstanding his previous non-success; and his and Knott's versions of how and when their understanding was reached differed markedly. Though only Gabbe was supposed to be hired, he shared his fee with Cantor and Gladstone; and though Knott professed ignorance thereof, the first Knott check was made payable to Gladstone's firm. And all denied they had ever believed that the Management Cor-

poration's contract rights were limited by the requirement of court approval for any payments to the debtor's officers, under § 77B, sub. c(11); but the payments were charged by that Corporation to its general expenses, rather than to the debtor, as the bare terms of the contract permitted. This background rebuts any non-sinister interpretation of the payments.

Petitioner tries to go further and to fix the time of the conspiracy as during a recess of the court hearing of July 31, 1935, since it says that Gladstone strenuously opposed the Knott contract before that time, while after it he assumed acceptance. But Gladstone's behavior may not be conclusive, for the court in the meantime had so clearly revealed its view of the matter as to make further argument futile. At any rate, the understanding was reached by September 24, 1935, the date of the first payment to Gabbe, at the latest. It may therefore have been made to quiet objections to the continuation of a terminable contract, and thus be fully as objectionable as a similar arrangement to secure its original approval.

■ The referee made a recital of these points as justifying inferences of fraud, and said that they "constitute circumstantial evidence of what the petitioner alleges but has failed to establish by direct proof." He then continued, "Even with a finding to the contrary, the petitioner may prevail" for another reason (lack of court knowledge or approval of the compensation paid to an officer of the debtor). We take this to be intended as a finding of fraud, and an alternative ground of decision. The court, by the terms of its order, accepted that finding; and we think the evidence substantial and sufficient to support it.

■ It is true that direct evidence that the 3 per cent paid the Management Corporation was excessive was lacking. Later on the Corporation did accept a 2 per cent contract from the present petitioner, but that allowed Knott an option to terminate and did not condition payment of the fee on the amount earned. A strong inference may be drawn from the fact that here the Management Corporation actually retained only 2 per cent, although the only disinterested witness called in this connection testified for respondents that the contract was a favorable one. But recovery does not depend on the showing of loss to the debtor resulting from the fraud-

ulent agreement, not even on any conscious scheme to buy and sell the compliance of the debtor's officers. The fact that they received one-third of a commission paid from the estate of which they were fiduciaries, regardless of an intent to defraud or of harm to the estate, is in itself sufficient to warrant recoupment. Magruder v. Drury, 235 U.S. 106, 35 S.Ct. 77, 59 L.Ed. 151; Jackson v. Smith, 254 U.S. 586, 41 S.Ct. 200, 65 L.Ed. 418; Woods v. City Nat. Bank & Trust Co., 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. ——; Sexton v. Sword S. S. Line, 2 Cir., 118 F.2d 708. Furthermore, each of the several respondents having participated generally in the illegal arrangement, each is liable not merely for the amount of his own profit, but jointly and severally for the illegal profit of all. Jackson v. Smith, supra; Sexton v. Sword S. S. Line, supra.

This covers the payments made up to March 24, 1937, when a trustee was appointed. Thereafter debtor's officers were no longer in even nominal possession, and had no control over the debtor's property. Since they were without a fiduciary's power, it is asserted that then at any rate they had no fiduciary obligations to the estate. Moreover, § 77B, sub. c(11), which was relied on below as an alternative ground for recoupment of everything paid Gabbe—as permitting "only such reasonable compensation as the judge shall from time to time approve" to debtor's officers—is in terms limited to the period "while the debtor is in possession"; though the law appears to be quite otherwise under the new Chandler Act, § 191, 11 U.S.C.A. § 591. A new contract covering this latter period, not otherwise unfair or the result of fraud, might then have survived the objections here made.

█ But in fact the later payment was made because of the earlier arrangement thus tainted. As the referee points out, Knott claimed this payment was made because Gabbe reminded him of his promise, somebody intimated a lawsuit, and he wished to keep his word. Or as the referee states, "Upon his [Gabbe's] mere reminder of a promise and the threat of a suit by one unnamed, he obtained as compensation a substantial sum which he did not earn." Since, as we have held, the promise was invalid from the beginning, the payments made in supposed satisfaction of it are recoverable as a unit.

As the court below pointed out, the bankruptcy judge in passing the original order stated that, instead of a trustee for bondholders, here they were to have a management corporation of great experience in running a hotel, and that it was accountable in the same way as a trustee. The fiduciary character of Knott and the Corporation was thus understood from the outset. The objection to the form of secret agreement here disclosed is shown not only in the tightening of the restrictions effected by the Chandler Act referred to above, but also by the passage on August 25, 1937, of the act, 28 U.S.C.A. § 572a, making unlawful and a criminal offense agreements by "any party in interest" with "any other party in interest" in a receivership or reorganization proceeding fixing the amount of fees or other compensation to be paid out of the estate. Senator Borah, in reporting the bill to the Senate, referred to such agreements as "the heart of the misdoings with reference to receivership cases." Compare the quotation from his remarks in Re Trans-State Oil Co., D. C. S. D. Tex., 24 F.Supp. 454, 457n.—reversed in Zweifel, Tuohy & Crager v. Trans-State Oil Co., 5 Cir., 99 F.2d 650.

██ A final objection is made, based on the exercise by the court of summary, rather than plenary, jurisdiction, because the moneys sought to be recouped were out of the possession of the court and subject to a serious adverse claim. Louisville Trust Co. v. Comingor, 184 U.S. 18, 22 S.Ct. 293, 46 L.Ed. 413. Perhaps this objection is not answered by saying that they were within the custody of the bankruptcy court at the time of the bankruptcy petition, because their removal from its custody was not by force, but by the order of the court itself. In re Rothschild, 2 Cir., 154 F. 194; Hinds v. Moore, 6 Cir., 134 F. 221. But summary jurisdiction may be invoked for purposes other than to protect property within the actual or constructive possession of the court. Here a contract was made with the debtor in possession and a fraud worked on its estate through a common conspiracy among the respondents. This amounts to a fraud and imposition upon the court itself; and in such cases the court undoubtedly has summary jurisdiction to protect itself and the interests of the persons and property within its custody. Bankruptcy Act, §§ 2, 23, 11 U.S.C.A. §§ 11, 46.

 A somewhat similar situation existed in Re Hollingsworth & Whitney Co., 1 Cir., 242 F. 753, where the respondent, which had contracted with the receiver of the estate to purchase certain assets, declined to carry out its obligations. Jurisdiction to make a summary order compelling respondent's performance was justified on the ground that it was violating an agreement with the court itself. Likewise it has been held that the debtor of a bankrupt who promises the bankrupt's trustee a certain sum in compromise of its obligations may be required by summary process to perform its obligations. In re Sobod, D. C. S. D. N. Y., 25 F.Supp. 344, Patterson, J. Such enforcement of contracts made with the court's officers, or remedy for fraud in the execution or performance of them, is a necessary step in the proper administration of the estate, and well within the powers of a bankruptcy court acting essentially as a court of equity. Pepper v. Litton, 308 U.S. 295, 303–308, 60 S.Ct. 238, 84 L.Ed. 281; Woods v. City Nat. Bank & Trust Co., supra, 312 U. S. at page 267, 61 S.Ct. at page 497, 85 L.Ed. —— (holding that "Under Ch. X of the Chandler Act the bankruptcy court has plenary power to review all fees and expenses in connection with the reorganization from whatever source they may be payable"); United States ex rel. Emanuel v. Jaeger, 2 Cir., 117 F.2d 483, 486; In re Zimmermann, 2 Cir., 66 F.2d 397, certiorari denied Z. & F. Assets Realization Corp. v. Doerschuck, 290 U.S. 697, 54 S.Ct. 208, 78 L.Ed. 599; Moore's Collier on Bankruptcy, 14th Ed. §§ 2.09, 23.02–23.04. See, also, May v. Henderson, 268 U.S. 111, 115, 45 S.Ct. 456, 69 L.Ed. 870; Rabinovitz v. Oughton, 3 Cir., 92 F.2d 297, certiorari denied 303 U.S. 649, 58 S.Ct. 746, 82 L.Ed. 1110.

It may be noted, although we do not regard it as either an essential requirement or a limitation of the court's power, under the circumstances here disclosed, that the order confirming the reorganization reserved jurisdiction to the court over several special matters, including, as stated above, an accounting directed to be had by the Management Corporation, and certain hearings before a referee involving the present issue, as well as generally for "the distribution of any funds not specifically disposed of by any previous order or for the purpose of closing the case, and in general to determine any and all matters in connection with these proceedings which have not been heretofore determined."

 Respondents also urge that, even if the court had juridiction to enter the order, by which respondents were "jointly and severally directed to pay to the Petitioner" the amounts in question, yet it lacked jurisdiction to enter a further judgment against them upon which the "petitioner have execution for said amounts against the said Respondents and each of them." This objection is perhaps occasioned by the court's entry of both an "order" and a "judgment," whereas a single document would have been quite sufficient. But respondents were not harmed in any material way. The court's action was a "judgment," May v. Henderson, supra, 268 U.S. at page 121, 45 S.Ct. 456, 69 L.Ed. 870; cf. Federal Rule of Civil Procedure 54, 28 U.S.C.A. following section 723c, and was properly that they pay generally, there being no identifiable funds. Ibid., 268 U.S. at pages 119, 120, 45 S.Ct. 456, 69 L.Ed. 870. And process to enforce a judgment for a money payment is by writ of execution according to state law, Federal Rule of Civil Procedure 69(a), by which execution not merely has long been proper to enforce equitable decrees for money, Geery v. Geery, 63 N.Y. 252, but in most circumstances has entirely supplanted contempt. Harris v. Elliott, 163 N.Y. 269, 57 N.E. 406.

Affirmed.