In re STARTEC GLOBAL COMMUNI-
CATIONS CORP., et al., Debtors.

Startec Global Communications
Corp., et al., Plaintiffs.

v.

Videsh Sanchar Nigam Limited And
Comerica Bank, Defendants.

Bankruptcy No. 01–2–5013–DK.
Adversary No. 02–1–A232–DK.

United States Bankruptcy Court,
D. Maryland.

April 24, 2003.

Jeffrey W. Rubin, Rockville, MD, Morton A. Faller, Shulman, Rogers, Gandal, Pordy & Ecker, PA, Rockville, MD, Philip D. Anker, Washington, DC, for Debtor.

Julie A. Mack, Office of U.S. Trustee, Greenbelt, MD, U.S. Trustee.

### ORDER DENYING MOTION OF DEFENDANT VIDESH SANCHAR NIGAM LIMITED FOR ORDER DISMISSING STAYING ADVERSARY PROCEEDING AND COMPELLING ARBITRATION OF PLAINTIFF'S CLAIMS AND GRANTING RELATED RELIEF

DUNCAN W. KEIR, Bankruptcy Judge.

For the reasons set forth in the following Memorandum of Decision, the Motion of Defendant Videsh Sanchar Nigam Limited for Order Dismissing Staying Adversary Proceeding and Compelling Arbitration of Plaintiffs' Claims and Granting Related Relief is denied.

---

1. Prior to the Motion to Vacate, on September 18, 2002, Defendant filed a Motion by Defendant Videsh Sanchar Nigam Limited to Dismiss Adversary Proceeding Complaint for

### MEMORANDUM OF DECISION

Plaintiffs commenced this adversary proceeding by the filing of a Complaint for Emergency Injunctive Relief, Contempt Sanctions, Turnover of Property of the Estate, Injunctive Relief, Damages, and Declaratory Judgment, and Objection to Proof of Claim (including Counterclaims) (the "Complaint"). Initially, Defendant failed to respond to the Complaint, prompting the issuance of an Entry of Default and the court's Order Directing Entry of Default against Defendant Videsh Sanchar Nigam Limited (the "Default Order"). Following the Default Order, Defendant filed a Motion by Defendant Videsh Sanchar Nigam Limited to Vacate Clerk's entry of Default as to Defendant Videsh Sanchar Nigam Limited and to Renew Motion by Defendant Videsh Sanchar Nigam Limited to Dismiss Adversary Proceeding Complaint for Ineffective Service of Process or in the Alternative to Stay the Adversary Proceeding and Compel Arbitration (the "Motion to Vacate") on September 23, 2003.[1] Both parties submitted memoranda of law in support of or opposition to the Motion to Vacate; the court held a hearing on these issues on December 3, 2002. At that hearing the court required further clarification from the parties and subsequent briefs were filed with the court. On February 3, 2003, the court held a second hearing. At that hearing, Defendant agreed to waive defects in service provided that the service was deemed effective on the date of that hearing. Defendant also reserved the right to continue to seek dismissal on the basis of required arbitration.

In response to the events at the February 3, 2003 hearing and the pending Com-

Ineffective Service of Process or in the Alternative to Stay the Adversary Proceeding and Compel Arbitration.

plaint, Defendant filed a renewed Motion of Defendant Videsh Sanchar Nigam Limited for Order Dismissing Staying Adversary Proceeding and Compelling Arbitration of Plaintiffs' Claims and Granting Related Relief (the "Motion to Dismiss"). The Motion to Dismiss seeks dismissal of the Complaint, or in the alternative to require the Plaintiffs to submit to binding arbitration. For the reasons set forth in this Memorandum, the court determines that the Defendant's Motion to Dismiss shall be denied.

The Complaint contains nine counts[2] asserting causes of action against the Defendant upon three alleged transactions. The Plaintiffs' factual allegations contain averments that prior to Plaintiffs' voluntary bankruptcy petition filing on December 14, 2001, Plaintiffs and Defendant were parties to the International Telecommunication Services Agreement between Videsh Sanchar Nigam, Ltd. and Startec Incorporated (the "Services Agreement"), pursuant to which each party would pay to the other certain charges based upon services provided in the conduct of international communication. At the time of the bankruptcy petition, Plaintiffs owed Defendant an amount in excess of $5,900,000.00 for services rendered pre-petition.

Shortly after the commencement of the bankruptcy case, Plaintiffs filed an Emergency Motion for Authorization to Pay Claims of Critical Trade Vendors by Startec Global Communications Corporation (the "Critical Vendor Motion"). That motion requested that the court authorize the debtor-in-possession (Plaintiffs herein) to pay some or all of pre-petition unsecured obligations to certain creditors, notwithstanding the stay imposed 11 U.S.C. § 362(a)[3] and the restrictions on use of debtors' property (including cash) imposed by Section 363. After notice and emergency hearing conducted on December 19, 2001, this court, on December 20, 2001, entered an Order Pursuant to Section 105(a) of the Bankruptcy Code Authorizing Startec Global Operating Company to Pay Claims of Critical Trade Venders (the "Critical Vendor Order").

In the Complaint, Plaintiffs assert that they made a critical vendor payment in the amount of $1,000,748.02 (the "Critical Vendor Payment") (Compl.¶ 44) to Defendant under the terms of the Critical Vendor Order. It is further averred that Plaintiffs entered into a post-petition agreement with Defendant (the "LOC Standstill Agreement").[4] Plaintiffs state that under

**2.** The Complaint alleges the following counts:

1. Contempt of Court
2. Breach of Contract
3. Specific Performance of the Standstill Agreement
4. Promissory Estoppel
5. Collection on Account Stated
6. Illegal Setoff in Violation of Sections 362 and 553
7. Turnover of Property of the Estate
8. Objection Seeking Disallowance of Claims
9. Declaratory Judgment

**3.** Hereafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code, unless otherwise noted.

**4.** The LOC Standstill Agreement is allegedly memorialized in a letter from Ram Mukunda, Startec Operating CEO, sent by fax to Mr. Gupta of the Defendant. (Compl.¶ 14). The letter states in relevant part:

> We are making the payment to you on the assurances that you have given us and on the express understanding that VSNL will *not* draw on the outstanding letter of credit .... Rather, the letter of credit will secure only Startec's ongoing obligations to pay for traffic for calls made after Startec filed for bankruptcy on December 14, 2001 .... *If this understanding is in any respect incorrect, you need to inform me of that fact in writing* before 5:00 p.m. my time February 5, 2002.

*Id.* (emphasis in original).

the LOC Standstill Agreement Defendant agreed not to draw upon certain letters of credit, issued in favor of Defendant prior to the petition for the purpose of securing performance by the Plaintiffs under the Services Agreement, unless there were post-petition breaches by Plaintiffs of the LOC Standstill Agreement. (Compl.¶¶ 49–52). The LOC Standstill Agreement required Plaintiffs to make an additional critical vendor payment of approximately $1,000,000.00 (the "Second Critical Vendor Payment") in exchange for Defendant's continued services. (Compl.¶ 51). In addition to the Critical Vendor Payment and the Second Critical Vendor Payment, Plaintiffs assert that they paid $500,000.00 in February, 2002 and $350,000.00 in March, 2002, for post-petition services. (Compl.¶¶ 58–59). Plaintiffs further aver that under the LOC Standstill Agreement, Defendant agreed to provide termination services for communication traffic from Plaintiffs, specifically agreeing not to impede such communications by use of blocks or blocking techniques.[5] (Compl.¶ 51).

In the Complaint, Plaintiffs primarily seek relief based on three acts of the Defendant. First, Plaintiffs state that subsequent to the delivery of the Critical Vendor Payment to Defendant and the creation of the alleged LOC Standstill Agreement, Defendant applied the Critical Vendor Payment to the pre-petition outstanding indebtedness owed to it by Plaintiffs (Compl. ¶¶ 104–13; Debtors' Supp. Mem. In Opp'n to Def. Mot. to Dismiss or Stay Adversary Proceeding and to Compel Arbitration ¶ 18). Second, Plaintiffs assert Defendant then drew upon the letters of credit[6] and refused to discontinue impeding communications traffic handled from Plaintiffs. *Id.* Finally, Plaintiffs accuse Defendant of failing to pay Plaintiffs $3,811,769.92 for service charges due to Plaintiffs from Defendant for post-petition services provided by Plaintiffs. (Compl ¶ 69). Instead, Plaintiffs allege that Defendant improperly set-off Plaintiffs' post-petition accounts receivable against the pre-petition indebtedness owed to the Defendant. (Compl.¶¶ 104–13).

Plaintiffs argue that this conduct by Defendant violated this court's Critical Vendor Order, placing Defendant in contempt of this court. Plaintiffs seek an enforcement injunction and monetary recovery under this court's contempt power.[7] Plaintiffs also asserts that the post-petition set-off of post-petition accounts against pre-petition indebtednesses owed to the Defendant gives rise to a cause of action for violation of the automatic stay pursuant to Section 362(h) and a violation of the court's contempt power. Plaintiffs further assert that the alleged set-off is an unauthorized post-petition transfer avoidable pursuant

---

5. Plaintiffs allege that prior to the LOC Standstill Agreement, Defendant "soft-blocked" Plaintiffs' inbound traffic by sending large amounts of outbound traffic. (Compl. ¶ 49). Plaintiffs assert that the "soft-blocking" continued through April, 2002, even after the LOC Standstill Agreement. *Id.* Plaintiffs also allege that Defendant "hard blocked" Plaintiffs' traffic by not allowing any termination of services in India.

6. Plaintiffs assert that on June 28, 2003, Defendant directed Comerica to draw down the letter of credit (Compl.¶ 11). The court notes that Comerica was a named defendant in this adversary proceeding but Plaintiffs voluntarily dismissed their action against Comerica on September 10, 2002.

7. Plaintiffs aver that the alleged misconduct of Defendant was willful and intentional and with full knowledge of the events in the bankruptcy case. Plaintiffs point out that Defendant is a member of the Official Committee of Unsecured Creditors appointed by the United States Trustee in the bankruptcy case and participates in such capacity in the conduct of the case.

to Section 549. In addition to ordering the avoidance of such set-off, Plaintiffs request this court disallow the Defendant's claim in the bankruptcy case pursuant to Section 502(d). Finally, Plaintiffs assert that Defendant has breached the LOC Standstill Agreement for which Plaintiffs asserts a right to damages.

The Defendant's Motion to Dismiss argues that, notwithstanding the manner in which the causes are styled, the Complaint is actually an action seeking recovery under, and enforcement of, the terms of the Services Agreement. (Mot. to Dismiss ¶ 69–83; Tr. of March 6, 2003 hearing at page 4, lines 15–22). Accordingly, Defendant argues that a binding arbitration clause contained in the Services Agreement compels this court to enforce such clause and requires that this matter be submitted to binding arbitration in India.[8] In support of the Defendant's argument, Defendant asserts that the requirements set forth in the Critical Vendor Order condition critical vendor payments upon the recipient providing continued services under "standard credit terms".[9] (Critical Vendor Order). Standard credit terms, according to Defendant, can only be determined by reference to the Services Agreement and the conduct of the parties required thereunder. (Tr. of March 6, 2003

Hearing at page 5, lines 2–16). Thus, Defendant argues that the issue of Defendant's alleged violation of this court's Critical Vendor Order can only be decided by determining whether or not the Defendant acted in breach of the Services Agreement.

Furthermore, Defendant asserts that the Critical Vendor Payment to Defendant was accepted by Defendant under a pre-petition Payment Schedule agreed to by Plaintiffs and Defendant, on December 12, 2001, shortly before Plaintiffs filed the bankruptcy case. (Mot. to Dismiss ¶ 12). Defendant argues that Plaintiffs misled Defendant in entering into such an agreement because at the time it was made, Plaintiffs had no intent of honoring the Payment Schedule. (Tr. of March 6, 2003 Hearing at page 8, lines 21–25, page 9, lines 1–25). As a consequence, Defendant argues that Plaintiffs come to the court with unclean hands. Defendant also denies many of Plaintiffs' factual averments, including the allegation that Defendant interfered with communication traffic originated through Plaintiffs.[10]

A motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41,

8. The clause referred to in Defendant's motion reads as follows:

Any dispute, controversy or claim arising out of or in connection with this Agreement, or breach, termination or validity hereof, shall first be settled through friendly discussions or negotiations between the Parties. If the dispute cannot be amicably settled either Party, as soon as practicable, the dispute amicably has been made to the other Party, give to the other notice in writing of the existence of such question, dispute or difference, specifying the nature and the point at issue, and the same shall be finally settled by Arbitration in India, in accordance with the Indian Arbitration Act and relevant regulations in force at that time. Arbitration will be conducted by a neutral arbitrator acceptable to both parties.

(Dec. of John Selvaraj in Support of Debtor's Mot. for T.R.O. and Prelim Inj., Ex. 1, Service Agreement ¶ 7).

9. The Critical Vendor Order states, "ORDERED that no Critical Vendor shall receive payment unless that Critical Vendor has agreed to provide postpetition services to Startec Operating on standard credit terms . . . ." (Critical Vendor Order).

10. As discussed more fully hereinafter, the disputed facts cannot be resolved upon a motion to dismiss.

45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court finds that the case should not be dismissed because Plaintiffs may be able to prove facts that would entitle them to relief.

As to Defendant's request to compel arbitration, Defendant points to the Federal Arbitration Act[11] and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958.[12] The Federal Arbitration Act provides a mechanism for enforcement of valid arbitration clauses in federal court. Section 2 of the Federal Arbitration Act states that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable ...." 9 U.S.C. § 2. Section 4 of the Federal Arbitration Act grants parties the power to petition federal courts for an order to compel arbitration, which is the remedy sought by Defendant. 9 U.S.C. § 4.

As stated by the United States Court of Appeals for the Fourth Circuit, the Federal Arbitration Act "directs the court to order arbitration once it is 'satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue,' ...." *Mercury Construction Corp. v. Moses H. Cone Memorial Hospital (In re Mercury Construction Corp.),* 656 F.2d 933, 939 (4th Cir.1981). The United States Supreme Court agreed with the Fourth Circuit by writing, "[t]he effect of [the act] ... is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). *See also, Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985) ("Clearly, the policies underlying the federal arbitration act favor enforcement of agreements to arbitrate disputes.").

However, the parties agree that this policy of enforcement of arbitration agreements is qualified and such agreements are not to be enforced where Congress, by a separate statute, sets forth a conflicting framework for dispute resolution. As stated by the Supreme Court, "[l]ike any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." *Shearson/American Exp. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). *See also, United States Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity Assoc., Inc. (In re U.S. Lines, Inc.),* 197 F.3d 631, 640 (2d Cir.1999) (holding that a Federal Arbitration Act mandate, including those subject to international agreement, may be overridden by a "contrary congressional command ..." such as the mandates set forth in the Bankruptcy Code). The Supreme Court has established a general inquiry regarding a determination as to whether statutory claims may be arbitrated. First the court determines if the parties agreed to submit their claims to arbitration, then the court asks if there is

---

**11.** The Federal Arbitration Act appears at 9 U.S.C. § 1, *et seq.*

**12.** The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of

June 10, 1958 is codified at 9 U.S.C. § 201, *et seq.* The Convention became effective in the United States on December 29, 1970.

evidence of intent to waive judicial remedies for statutory rights. *Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 90, 121 S.Ct. 513, 521, 148 L.Ed.2d 373 (2000).

Although no published opinion by the United States Court of Appeals for the Fourth Circuit has been located, at least two Circuits have discussed the application of these principles in the context of a bankruptcy case.[13] The Second Circuit in *In re U.S. Lines,* 197 F.3d 631 (2d Cir. 1999), faced the issue of a motion by creditors of debtor-in-possession to compel arbitration of an adversarial dispute in the bankruptcy court. The bankruptcy court had determined the request for declaratory judgment to determine a creditors rights under various insurance contracts to be "core" because "the declaratory judgment proceedings are integral to the bankruptcy court's ability to preserve and equitably distribute the Trust's assets." *In re U.S. Lines,* 197 F.3d at 641. The court found that because the declaratory judgment issues were core, the court had discretion to deny arbitration despite valid arbitration agreements. *Id.* at 640–41. The *U.S. Lines* court noted that the bankruptcy court's exercise of discretion must take into account the underlying purpose of the Bankruptcy Code and whether enforcing an arbitration clause would ad-

versely affect that purpose. *Id.* On appeal, the Second Circuit affirmed the bankruptcy court stating, "[i]n the bankruptcy setting, congressional intent to permit a bankruptcy court to enjoin arbitration is sufficiently clear to override even international arbitration agreements." *Id.* at 639.

Prior to the *U.S. Lines* decision, the United States Court of Appeals for the Fifth Circuit in *Insurance Company of North America v. NGC Settlement Trust & Asbestos Claims Management Corp. (In re National Gypsum),* 118 F.3d 1056 (5th Cir.1997), dealt with a mandatory arbitration clause in a negotiated agreement between debtor, insurance carriers and other parties who would defend against possible asbestos-related suits. An adversary proceeding was initiated by a creditor and the creditor filed a motion seeking the bankruptcy court's abstention from the dispute in favor of arbitration. The bankruptcy court denied the motion because the bankruptcy court was the most efficient forum to determine the issues raised by the complaint. *Id.* at 1060. The Fifth Circuit affirmed, and relying on *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149 (3d Cir.1989), held that a court should enforce an arbitration clause unless such enforcement would "jeopardize the objectives of the Code

---

**13.** *Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty Corp.),* 270 B.R. 108 (S.D.N.Y.2001), involved the issue of whether the bankruptcy court should compel and enforce arbitration of a dispute arising from a pre-petition contract. The court determined the first inquiry is a determination of whether the bankruptcy court has discretion to refuse arbitration. *Winimo,* 270 B.R. at 118. The court wrote that discretion exists if the proceeding involves core matters because " 'the interest of the bankruptcy court is greater' ...." *Id.* (citation omitted).

Second, the court wrote that the bankruptcy court must analyze "whether arbitration of the proceeding would jeopardize Bankruptcy

Code policy." *Id.* In *Winimo,* the court examined if the contract was core or non-core based upon whether the contract is antecedent to the bankruptcy petition and the degree to which the proceeding is independent of bankruptcy reorganization. *Id.* at 119. Ultimately, the court determined that because the defendant had filed a proof of claim it sought the benefits of the bankruptcy court and there the matter is deemed core. *Id.* at 120 (footnote omitted). However, the court held that the bankruptcy court did not have the discretion to refuse to compel arbitration because the arbitration would not "jeopardize an underlying purpose of the Bankruptcy Code ...." *Id.* at 126.

. . . ." *Id.* at 1064 (internal quotation marks omitted). The Fifth Circuit wrote:

> We think that, at least where the cause of action at issue is not derivative of the pre-petition legal or equitable rights possessed by a debtor but rather is derived entirely from the federal rights conferred by the Bankruptcy Code, a bankruptcy court retains significant discretion to assess whether arbitration would be consistent with the purpose of the Code, including the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.

*Id.* at 1069.

█ In the instant case, not surprisingly, Plaintiffs characterize the causes of action in the Complaint as "core" matters as defined by 28 U.S.C. § 157(b)(2). Plaintiffs urge the court to exercise its discretion to have the matters decided by the bankruptcy court, arguing that the issues are fundamental to bankruptcy law and involve an interpretation of this court's orders and determination of the appropriate relief for violation thereof.

On the other hand, the Defendant's characterization of the dispute as involving issues which are "fully arbitrable" and requiring a determination of the party's alleged breaches or lack thereof under the Service Agreement, leads Defendant to conclude that the causes of action are not truly "core" bankruptcy matters. Defendant argues that the court must enforce the federal policy of binding arbitration, or at the very least should exercise its discretion to enforce the policy of binding arbitration.

█ Notwithstanding the Defendant's argument, this court finds that in large part the causes of action asserted either invoke this court's exclusive jurisdiction and/or are matters principally handled by the bankruptcy court under its core jurisdiction. Generally, enforcement of a court's order by contempt power is the sole province of the court that originated the order. The Supreme Court held that courts have the inherent power to enforce compliance with their own lawful orders, which enforcement is done through the court's civil contempt power. *Shillitani v. U.S.*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966) (citations omitted). In *Celotex v. Edwards*, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), the Supreme Court explicitly extended this principle to bankruptcy courts. The Court wrote:

> [w]e have made clear that "[i]t is for the court of first instance to determine the question of the validity of law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decisions are to be respected."

*Celotex*, 514 U.S. at 313, 115 S.Ct. at 1501.

█ Just as modification or vacatur of an order must be sought from the originating court, or by a direct appeal from that court, request for the enforcement must be addressed to the originating court. If parties could apply to another tribunal, or arbitrator, to determine whether an order of another court has been breached, or should be enforced, and by what means, an improper collateral attack on the order effectively would be permitted. The *Celotex* Court refused to allow a party to collaterally attack the bankruptcy court's order because to do so would seriously undercut "the orderly process of the law." *Id.* A court cannot delegate its contempt power because the power "is inherent in all courts; its existence is essential to the preservation of order in

judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *Ex parte Robinson,* 19 Wall. 505, 86 U.S. 505, 510, 22 L.Ed. 205 (1873). It has been argued that the inherent contempt power of the courts could not be delegated to the bankruptcy courts; however the Fourth Circuit held that the delegation of the contempt power to a bankruptcy court is not unconstitutional. *Burd v. Walters (In re Walters),* 868 F.2d 665, 670 (4th Cir.1989). Therefore, this court, and this court only, has the power to enforce its own order and sanction violations by civil contempt.

As to Plaintiffs' cause of action for violation of the automatic stay, enforcement of the automatic stay is generally held to be the exclusive jurisdiction of the Bankruptcy Court. In *Grant v. Cole (In re Grant),* 281 B.R. 721 (Bankr.S.D.Ala.2000), the United States Bankruptcy Court for the Southern District of Alabama found that a bankruptcy court does not have to compel arbitration when a violation of the automatic stay is alleged because to do so would "allow an arbitrator to decide whether or how to enforce a federal injunction." *Grant,* 281 B.R. at 725. The *Grant* court relies on the principal, as stated above, that a court has the inherent power to enforce its own orders and that the automatic stay is an order of the bankruptcy court. *Id.* at 724. *See Shillitani,* 384 U.S. at 370, 86 S.Ct. at 1535; *Celotex,*

514 U.S. at 313, 115 S.Ct. at 1501. *See also, Cavanaugh v. Conseco Finance Servicing Corp. (In re Cavanaugh),* 271 B.R. 414, 424 (Bankr.D.Mass.2001) ("the automatic stay is the single most important protection afforded to debtors by the Bankruptcy Code.... Accordingly, this Court should determine whether that injunction was violated and protect it from collateral attack from another forum.").

Similarly, avoidance of transfers is specifically defined by statute as part of the core jurisdiction of the Bankruptcy Court and a matter over which the court holds exclusive jurisdiction.[14] In this proceeding, avoidance is sought solely under a provision of the Bankruptcy Code and is a cause of action that may only exist within a bankruptcy case. As such this cause of action is within this court's exclusive jurisdiction. *See Yellow Cab Cooperative Ass'n v. Mathis (In re Yellow Cab Cooperative Ass'n),* 185 B.R. 844, 847 (Bankr.D.Colo. 1995) (finding that an action under Section 549 was within the exclusive jurisdiction of the bankruptcy court); *General Instrument Corp. v. Financial & Business Services, Inc. (In re Finley),* 62 B.R. 361, 368 (Bankr.N.D.Ga.1986) (holding that bankruptcy court has exclusive jurisdiction over recovery of preferences and fraudulent conveyances).

As to the cause of action asserted for breach of a post-petition contract, Plaintiffs assert that this court is the proper

---

**14.** 28 U.S.C. § 157(b) provides that: "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11 ... (2) Core proceedings include, but are not limited to... (F) proceedings to determine, avoid, or recover preferences;" 28 U.S.C. § 157. The United States Bankruptcy Court for the Southern District of New York stated that an avoidance proceeding to recover assets of a debtor is within the bankruptcy courts' core jurisdiction. *Official Comm. Of Unsecured Creditors v. Transpacific Corp., Ltd. (In re Commodore Int'l, Ltd.),* 242 B.R. 243, 261 (Bankr.S.D.N.Y. 1999). *See also, Braunstein v. Branch Group, Inc. (In re Mass. Gas & Elec. Light Supply Co., Inc.),* 200 B.R. 471, 472 (Bankr.D.Mass.1996) (finding that an action under Section 549(a) for avoidance of a set-off as an unauthorized post-petition transfer to be core); *N. Parent, Inc. v. Cotter & Co. (In re N. Parent, Inc.),* 221 B.R. 609, 628 (holding that a proceeding under Section 547 is a core proceeding).

forum. The United States District Court for the District of Maryland in *Edgcomb Metals Co. v. Eastmet Corp.*, 89 B.R. 546 (D.Md.1988), discussed the issue of a company which entered into a post-petition contract with the debtor declaring that the bankruptcy court had no jurisdiction to hear a breach of contract claim. The court held that an entity which chose to contract with a debtor-in-possession, knowing that the debtor is subject to the bankruptcy court's jurisdiction, has consented to the bankruptcy court's jurisdiction. *Id.* at 550. The *Edgcomb* court relied upon the Supreme Court decision in *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), which found that one who files a claim in a bankruptcy case is subject to the summary jurisdiction of the bankruptcy court.[15] *Id.* at 340, 86 S.Ct. at 478. More recently, the United States Court of Appeals for the Second Circuit wrote "[g]iven potential court supervision of estate administration, the legal fiction that the debtor-in-possession is a court official and that the contract is with the court itself is a fiction that borders on the truth." *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165, 170 (1st Cir.1987) (Breyer, J.).

Although Defendant attempts to characterize all of the causes of action pled by the Complaint as arising under the Services Agreement and within the scope of a binding arbitration clause, the court finds such argument unpersuasive. The arbitration clause in the Services Agreement states arbitration is required for "any dispute, controversy or claim arising out of or in connection with this Agreement . . . ." However, this court determines that the causes of action raised in the Complaint do not arise out of or in connection with the

Services Agreement; rather, the causes of action involve post-petition disputes and alleged violations of this court's orders. As the actions asserted by Plaintiffs do not directly arise from the Service Agreement, the binding arbitration is inapplicable. Furthermore, to the extent that any of the causes of action might be subject to the arbitration provision, because the actions are within this court's core jurisdiction and, at least as to some counts, exclusive jurisdiction, the court in its discretion finds that the best interests of the estate will be served by litigation of all claims before this court so as to provide one forum to determine all issues. Accordingly, the Motion to Dismiss is denied.

---

**15.** The United States Court of Appeals for the First Circuit has also held that a contract with a debtor-in-possession is in essence a contract with the court itself. *Governor Clinton Co. v. Knott*, 120 F.2d 149, 152 (2d Cir.1941).