In re STARTEC GLOBAL COMMUNICATIONS CORP., et al.

Videsh Sanchar Nigam Limited

v.

Startec Global Communications Corp., et al.

No. CIV.A.2003–1506.

United States District Court, D. Maryland.

Oct. 16, 2003.

---

Morton A. Faller, Shulman, Rogers, Gandal, Pordy, and Ecker PA, Rockville, MD, Philip D. Anker, Wilmer, Cutler and Pickering, Washington, DC, for Appellant.

Darius B. Withers, Kelley, Drye and Warren, Washington, DC, David A. Konuch, Kelley, Drye and Warren LLP, Washington, DC, Kevin Clark Walker, Paul Francis Doyle, Robert Lawrence Lehane, Kelley, Drye and Warren LLP, New York City, for Appellee.

## MEMORANDUM OPINION

CHASANOW, District Judge.

This case is before the court on appeal from the order of Bankruptcy Judge Duncan W. Keir, denying the motion of Appellant Videsh Sanchar Nigam Limited ("VSNL") to dismiss or, in the alternative, to compel arbitration of Plaintiff's claims. Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Bankr.Rule 8012. For reasons that follow, the court will affirm the bankruptcy court's denial of Appellant's motion to dismiss or, in the alternative, to compel arbitration.

## I. Background

The background out of which this appeal arises is lengthy and only the relevant facts and details will be discussed here. On December 14, 2001, Startec Global Communications, Corp. and its subsidiary Startec Operating (collectively "Startec") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for the District of Maryland. Both during and after the filing, Startec has continued to operate its business and manage its property as debtor in possession pursuant to Bankruptcy Code Sections 1107(a) and 1108. Three days later, on December 17, 2001, Startec filed an Emergency Motion for Authorization to Pay Claims of Critical

Trade Vendors. Startec sought authorization to satisfy, in whole or in part, the pre-petition unsecured claims of certain providers of overseas telecommunication services that were critical to the Debtor's reorganization efforts. VSNL, as the telecommunications vendor holding the largest pre-petition unsecured claim, was specifically identified as the single most "Critical Vendor" to Startec's business. On December 20, 2001, the bankruptcy court granted Startec the authority to make payments of up to $3.5 million for pre-petition debts, on the condition that Critical Vendors, including VSNL, receiving payments would continue to provide post-petition services to Startec. See Paper 4, ex. A14. Pursuant to the bankruptcy court's "Critical Vendor Order," Startec paid VSNL approximately $1 million on December 24, 2001. On January 21, 2002, VSNL filed a proof of claim in Startec's Chapter 11 case stating that Startec owed VSNL $4,783,305 as of December 31, 2001.

Startec asserts that it entered into a post-petition agreement (the "LOC Standstill Agreement") with VSNL under which VSNL agreed not to draw upon certain letters of credit issued in its favor prior to the petition for the purpose of securing performance by VSNL under the Services Agreement. The letters of credit were only to be drawn upon if Startec committed a post-petition breach of the LOC Standstill Agreement. Under the LOC Standstill Agreement, Startec was required to make an additional critical vendor payment of approximately $1 million in exchange for VSNL's continued post-peti-

tion services. Startec avers, *inter alia,* that VSNL breached this post-petition agreement by drawing upon the letters of credit and continuing to impede communications traffic handled by Startec. See id. at A19–20. Since the petition date, VSNL has continued to use Startec's circuits and the invoices for these post-petition services remain outstanding. Id. On July 1, 2002 Startec commenced an Adversary Proceeding against VSNL by filing a Complaint for Emergency Injunctive Relief, Contempt Sanctions, Turnover of Property of the Estate, Injunctive Relief, Damages, and Declaratory Judgment, and Objection to Proof of Claims (including Counterclaims). On February 24, 2003, VSNL answered the Complaint and renewed a previously filed motion to dismiss or to stay the Adversary Proceeding and compel arbitration.[1] An opposition and reply were filed, and the bankruptcy court heard oral argument on March 5, 2003.

On April 24, 2003, the bankruptcy court issued an order denying VSNL's motion in its entirety on the ground that the causes of action raised in the Complaint do not arise out of or in connection with the Services Agreement subject to arbitration, but instead involve post-petition disputes and alleged violations of the court's orders. Additionally, to the extent that any of the causes of action might be subject to the arbitration provision, the court, in its discretion, found that the best interests of the estate and the policies underlying the Bankruptcy Code were best served by keeping all claims within one forum. Ap-

1. Initially, VSNL failed to respond to Startec's complaint, prompting the bankruptcy court's Order Directing Entry of Default against VSNL. In response, VSNL them filed a Motion to Vacate and to Renew a previously filed Motion to Dismiss for Ineffective Service of Process or, in the Alternative to Stay and Compel Arbitration. A hearing before Judge Keir was held on December 3, 2002; addi-

tional briefs were requested and later filed with the court. A second hearing was held on February 3, 2003. VSNL agreed to waive defects in service provided that service was deemed effective on the date of that hearing. Defendant also reserved the right to seek dismissal on the basis of required arbitration. VSNL filed the Motion to Dismiss at issue in this case shortly thereafter.

pellant appeals from this denial, arguing: first, that the court applied the wrong standard when deciding the motion to dismiss and to compel arbitration; second, that the court's conclusion that none of the claims arise out of or in connection with the Services Agreement is erroneous; third, that the court's conclusion that the claims are core proceedings, or are within the bankruptcy court's exclusive jurisdiction, is erroneous; and fourth, that the court abused its discretion when it denied VSNL's motion to compel arbitration.

## II. Standard

On appeal from the bankruptcy court, the district court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *See In re Deutchman*, 192 F.3d 457, 459 (4th Cir. 1999). An appellate court reviews a lower court's determination of whether a cause of action is arbitrable *de novo*. *See Sydnor v. Conseco Financial Servicing Corp.*, 252 F.3d 302, 304–05 (4th Cir.2001). A lower court's determination as to whether a claim asserted in a bankruptcy court proceeding is core or non-core is also reviewed *de novo*. *See United States Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity Assoc., Inc. (In re U.S. Lines)*, 197 F.3d 631, 636 (2d Cir.1999). Finally, the exercise of a bankruptcy court's discretion to decline to compel arbitration is reviewed for abuse of discretion. *See In re Winimo Realty Corp.*, 270 B.R. 108, 117 (S.D.N.Y.2001).

## III. Analysis

### A. Correct Legal Standard

VSNL argues that the bankruptcy court improperly applied the standard of a mo-

tion to dismiss in lieu of the standard, and applicable presumption, of a motion to compel arbitration. According to VSNL, the court should not have looked at whether, taking the allegations as true, the Adversary Proceeding Complaint failed to state a claim. Rather, the court should have taken VSNL's version of the facts as true and placed a burden upon Startec to show that enforcing arbitration would seriously jeopardize the objectives of the bankruptcy court. Startec contends that VSNL's argument has been waived because it was not included in the Statement of Issues and, even if not waived, that the bankruptcy court did not apply an improper standard.[2]

Under Bankruptcy Rule 8006, a party appealing to the district court must file a "statement of issues to be presented" on appeal "to assure that the district court is fully advised as to the contentions of the party · on appeal from the bankruptcy court." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 132 (3d Cir.1998); *see also* Fed.R.Bankr.P. 8006. Rule 8006 has been viewed as existing "to ensure the adequacy of the record, and does not affect the ability of any party to appeal findings or conclusions of the bankruptcy court." *In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 104 F.3d 1147, 1148 (9th Cir.1997) (citing 9 COLLIER ON BANKRUPTCY 8006–10 (1996)); NORTON BANKRUPTCY RULES PAMPHLET 594 (1996–97 ed.). When an appealing party fails to raise an issue in its statement, the issue may be deemed waived, at the district court's discretion and if not inferable from those issues properly raised. *See In re Freeman*, 956 F.2d

---

2. Although the Fourth Circuit has addressed whether an appeal may be dismissed for failure to comply with the timeliness requirement of Rule 8006, *see In re SPR Corp.*, 45 F.3d 70, 71 (4th Cir.1995), it has not addressed the issue of whether an argument is waived if not included in the statement of issues.

252, 255 (11th Cir.1992) (declining to consider issues that were not raised in statement of issues and not inferable from the issues properly raised).

▮▮▮ VNSL did not include in its statement of the issues the argument that the district court applied the incorrect standard. Nevertheless, this court finds that the bankruptcy court did not err in applying the standard governing a motion to dismiss. The bankruptcy court first reviewed the complaint pursuant to Appellant's motion to dismiss and concluded that Plaintiffs had stated a claim. It then proceeded to review the record pursuant to Appellant's alternative motion to compel arbitration. In doing so, it did not restrict its review only to the allegations in the complaint, but rather it properly examined the entire record and conducted numerous hearings to determine the various arbitration issues. Thus, the bankruptcy court applied the appropriate standard when reviewing each of VSNL's motions.

## B. Arbitrability of Startec's Claims

### 1. Whether the Claims Arise Out Of or In Connection With the Services Agreement

The bankruptcy court first found that none of Startec's claims arise out of or in connection with the Services Agreement because they involved post-petition disputes and alleged violation of court orders. VSNL contends that each of Startec's claims is directly related to or derived from the Services Agreement and thereby falls under the broadly worded arbitration clause.

▮▮▮ While there is a federal policy favoring the enforcement and broad interpretation of arbitration agreements, "parties cannot be forced to submit to arbitration if they have not agreed to do so." *Chastain v. Robinson–Humphrey Co.,*

*Inc.,* 957 F.2d 851, 854 (11th Cir.1992) (citing *Volt Info. Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). Thus, before compelling or staying arbitration, the court must first "determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *see also Arrants v. Buck,* 130 F.3d 636, 640 (4th Cir.1997) ("Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate."). In doing so, the court will enforce the arbitration provisions, like other contracts, according to their terms and determine the applicability of an arbitration agreement to a particular dispute according to state law principles of contract interpretation. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *see also NRT MidAtlantic, Inc. v. Innovative Prop., Inc.,* 144 Md.App. 263, 280, 797 A.2d 824, 834 (2002) (requiring "reliable evidence from the language actually employed in the contract that the parties intended the disputed issue to be the subject of arbitration, the intent of the parties being the controlling factor").

▮▮▮ The parties' intent, especially "when an arbitration clause is invoked after the contractual relationship between the parties has ended, ... governs whether the clause's authority extends beyond the termination of the contract." *Zandford v. Prudential–Bache Securities, Inc.,* 112 F.3d 723, 727 (4th Cir.1997). Finally, "[i]f the arbitration agreement cannot reasonably be construed to cover [a particular] dispute ..., arbitration need not be compelled." *The Redemptorists v. Coulthard Services, Inc.,* 145 Md.App. 116, 146, 801 A.2d 1104, 1122 (2002) (quoting *Gelco*

*Corp. v. Baker Indus., Inc.,* 779 F.2d 26 (8th Cir.1985)).

 Here, the language of the arbitration provision in the Services Agreement requires arbitration of "any dispute, controversy or claim arising out of or in connection with [the Services Agreement], or breach, termination or validity hereof." Paper 4, ex. A66. Appellant contends that the arbitration clause at issue is extremely broad and therefore applies to disputes that do not arise under the governing contract.[3] While broad, this clause does have limits.

Primarily, any claim must have some connection with the Services Agreement. Here, other than the fact that the parties' relationship began through earlier contacts, there is no such connection. Moreover, the clause does not indicate the parties' intent to arbitrate all disputes between themselves, including those independent of, or arising after the termination of, the Services Agreement. While a broad arbitration clause is more likely enforced, such an outcome is not absolute. In *Cara's Notions, Inc. v. Hallmark Cards, Inc.,* 140 F.3d 566, 569 (4th Cir.1998), the Fourth Circuit examined whether the scope of an extremely broad arbitration clause would encompass a dispute arising from a second agreement between the parties that did not contain an arbitration clause. The arbitration clause required arbitration of "any controversy or claim arising out of or relating to ... *any aspects of the relationship between [the parties]*." *Id.* at 569 (emphasis added). Given the breadth of the clause's language, i.e., reference to the relationship of the parties, the court found that "the arbitration clause was intended to apply to all conflicts between the parties." *Id.* at 571. The arbitration clause in this case, unlike the clause in *Cara's Notions,* does not evince an intent to arbitrate every dispute between the parties, including those that are independent of or not derived from the Services Agreement.

 Based on the foregoing, this court agrees that Counts II, III, and IV of the Complaint involve an alleged violation of the LOC Standstill Agreement, which the parties entered into *after* Startec filed its bankruptcy petition.[4] The LOC Standstill Agreement was a separate agreement setting forth the terms under which the Debtor would comply with the bankruptcy court's order to make Critical Vendor payments and VSNL would provide services to Debtor post-petition. As a post-petition contract with a debtor-in-possession, the breach of which will impact the estate, claims concerning the LOC Standstill Agreement do not arise out of and are not in connection with the previous Services

---

3. Appellant cites *Long v. Silver,* 248 F.3d 309, 313 (4th Cir.2001), as support for its argument. *Long* is distinguishable, however, because the claims in this case, unlike those in *Long,* are neither significantly related to nor solely derived from the contract containing the arbitration clause.

4. Under the LOC Standstill Agreement, Startec promised to make an additional critical vendor payment to VSNL of approximately $1 million and to remain current on its post-petition obligations to VSNL, and VSNL promised not to block circuits going forward

or to draw on letters of credit provided that Startec remained current on a post-petition basis. Startec's complaint alleges that VSNL violated the LOC Standstill Agreement by continuing to interfere with circuits used by Startec post-petition and later by hard-blocking Startec's services entirely. *See* Paper 4, ex. A22–23. Count II alleges breach of contract based on the LOC Standstill Agreement, and Counts III and IV seek specific performance and promissory estoppel respectively as a result of the alleged breach.

Agreement.[5] Thus, the bankruptcy court did not err when it found that Counts II, III, and IV involve a post-petition agreement not subject to arbitration.

As to the remaining claims, the bankruptcy court also questioned whether they arose out of the agreement but held that even if the claims were to be subject to the arbitration provision, they fall within the exclusive jurisdiction or core jurisdiction of the bankruptcy court. As such, the bankruptcy court exercised its discretion to refuse to compel arbitration.

### 2. Whether It Was Within the Bankruptcy Court's Discretion to Refuse to Compel Arbitration

 As VSNL highlights repeatedly throughout its brief, enforcement of arbitration agreements is a highly favored method of dispute resolution. See Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). However, the presumption in favor of arbitration may be "overridden by a contrary congressional command." Id. at 226, 107 S.Ct. 2332. While the Fourth circuit has not directly addressed this issue, other circuits have recognized that a bankruptcy court has discretion to decline to compel arbitration. See e.g., In re Winimo, 270 B.R. at 118 (discretion to decline when a conflict exists "between the Bankruptcy Code, ... and the Arbitration Act"); In re U.S. Lines, 197 F.3d at 639

("In the bankruptcy setting, congressional intent to permit a bankruptcy court to enjoin arbitration is sufficiently clear to override even international arbitration agreements."); National Gypsum Co. v. NGC Settlement Trust, 118 F.3d 1056, 1064 (5th Cir.1997). Before ruling on a motion to compel arbitration, a bankruptcy court is confronted with a two-stage inquiry: (1) "the court must determine whether it has discretion to refuse arbitration" and (2) if such discretion exists, the court must determine whether "any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing [the] arbitration clause." In re Winimo, 270 B.R. at 118 (quoting U.S. Lines, 197 F.3d at 640).

### a. Whether the Bankruptcy Court Had Discretion To Refuse Arbitration Of Startec's Claims

In deciding the first prong of this inquiry, courts generally look to whether the dispute involves core or non-core proceedings.[6] See National Gypsum, 118 F.3d at 1066; In re U.S. Lines, 197 F.3d at 640. In a core proceeding, the bankruptcy court's interest is greater, as is the risk of a conflict between the Bankruptcy Code and the Arbitration Act. In re Winimo, 270 B.R. at 118. In this case, the bankruptcy court held that the causes of action

---

5. VSNL further appeals to the court by arguing that these counts do not involve a post-petition contract because the parties never entered into such an agreement. Despite VSNL's argument that an agreement never existed, the record contains evidence that both parties were aware of and operating under this post-petition agreement. See Paper 4, ex. A248, A250, A255, and A267 (examples of the letter at issue and the months long correspondence between the parties through which the LOC Standstill Agreement was formed).

6. The Bankruptcy Code divides claims in bankruptcy proceedings into two principal categories: "core" and "non-core". See 28 U.S.C. § 157. In "core" proceedings, bankruptcy courts have the authority to "hear and determine all ... core proceedings arising under Title 11 ... and may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). In "non-core" proceedings, "unless the parties consent, the bankruptcy court may only make recommended findings of fact and conclusions of law which are subject to de novo review in the district court." 28 U.S.C. § 157(c)(1)(2).

either invoke the court's exclusive jurisdiction and/or were matters invoking its core jurisdiction. Appellant argues that the bankruptcy court committed reversible error because these claims do not have a significant impact on the estate, but instead merely represent a possible source of revenue to augment Startec's estate. The bankruptcy court's decision as to the state of a claim is reviewed *de novo*. *See In re Lines,* 197 F.3d at 636.

■ As a preliminary matter, "[t]he bankruptcy court has core jurisdiction over claims arising from a contract formed post-petition under § 157(b)(2)(A)." *In re U.S. Lines,* 197 F.3d at 637; *see also In re Incor, Inc.,* 113 B.R. 212, 216 (D.Md.1990). As discussed previously, the LOC Standstill Agreement is a post-petition agreement that VSNL negotiated and entered into with debtor-in-possession Startec. Therefore, the surrounding claims, Counts II, III, and IV, were properly deemed core under the governing principles. As to the remaining claims, a proceeding will be deemed core if, by its nature, "either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function." *In re U.S. Lines,* 197 F.3d at 637 (internal citations omitted). While non-exhaustive and not absolute in all cases, the Bankruptcy Code provides a list of proceedings regarded as core, many of which are at issue in this case.[7] Relying on these principles, the bankruptcy court held that, to the extent any of the causes of action might be subject to the arbitration provision, they fall within court's core jurisdiction and, under bankruptcy principles and policies,

were properly held within the court's jurisdiction. Based on an independent review of the relevant facts and case law, this court finds no basis upon which to find otherwise.

■ As to Count I of Startec's complaint, the alleged contempt of court is based on VSNL's violation of the court's Critical Vendor Order, which required VSNL to provide adequate post-petition services to Startec. Even after filing the bankruptcy petition, Startec's business operations continued and were almost entirely dependent upon the continued provision of services by its Critical Vendors—a fact the bankruptcy court was aware of when it issued the Critical Vendor Order. *See* Paper 4, ex. A13. By its nature, the contempt claim is based on an order from the bankruptcy court affecting matters concerning the administration of the estate, independent from any pre-petition contract.[8] Moreover, the power to enforce compliance with an order is inherently vested in the issuing court's contempt power; bankruptcy courts are not precluded from relying on this principle. *See Celotex v. Edwards,* 514 U.S. 300, 313, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

The bankruptcy court also found several of the claims to fall within its exclusive jurisdiction—a finding strengthened by each claim's underlying factual allegations and invocation of numerous provisions of the Bankruptcy Code. In Count VI, Startec alleges a violation of the automatic stay, basing its claim on § § 362 and 553 of the Code. As the bankruptcy court properly noted, "the automatic stay is the single most important protection afforded to

---

**7.** Section 157(b)(2) of the Bankruptcy Code provides an illustrative list of core proceedings.

**8.** In its review, the court also found that the contempt of court claim was not subject to

the arbitration provisions from the outset because it was based on an alleged violation of the court's orders and did not arise under the Services Agreement.

debtors by the Bankruptcy Code." *In re Cavanaugh*, 271 B.R. 414, 424 (Bankr. D.Mass.2001); *see also Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 292 (4th Cir.1986). Additionally, Counts VII and VIII rely directly on specific provisions of the Bankruptcy Code and fall within examples of core proceedings enumerated in § 157 of the Code. Count VII, relying on § § 542(b) and 553, sets forth a turnover claim, which has been construed as "core" when of significance to the estate's assets. *See In re Cassidy Land and Cattle Co.*, 836 F.2d 1130, 1132–33 (8th Cir.1988) (holding turnover claim to be core where debt was $2 million note that was sole asset of estate). Count VIII seeks disallowance of pre-petition claims under § 502(d). Sections § 157(b)(2)(B) and (C) explicitly refer to this type of claim as core.

Furthermore, Startec's claim for collection of amounts due from VSNL for postpetition services in Count V is a core claim because, although arguably a post-petition breach derived from a pre-petition contract, the millions of dollars at issue can have a significant impact on the administration of the estate and the bankruptcy court's ability to resolve all relevant matters effectively and efficiently. Moreover, this claim against VSNL for amounts owed constitutes a counterclaim as listed in § 157(b)(2)(C). Finally, VSNL's filing of its proof of claim further strengthens the bankruptcy court's determination regarding the core proceedings. *See In re Winimo Realty Corp.*, 270 B.R. at 120, n. 7. ("The fact that a defendant, by filing a proof of claim, subjected itself to the Bankruptcy Court's equitable jurisdiction may be itself be a sufficient basis for finding a proceeding core."). Thus, the bankruptcy court did not err when it found that the claims asserted were core proceedings under the Bankruptcy Code.

**b. Whether the Court Properly Exercised Its Discretion When It Refused To Compel Arbitration**

While finding that a claim is core is often a factor in finding that a court has discretion to refuse to compel arbitration, "a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration." *In re U.S. Lines*, at 640. Rather, the court must turn to the second prong of the inquiry and "carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause." *Id.* An arbitration clause should not be enforced if doing so "would seriously jeopardize the objectives of the Code." *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1161 (3d Cir. 1989). "Where the bankruptcy court has properly considered the conflicting polices in accordance with law," its exercise of discretion should be acknowledged and its determination that arbitration will seriously jeopardize a particular core proceeding should receive deference. *See In re U.S. Lines*, 197 F.3d at 641.

In this case, as discussed in detail above, several of the asserted claims involve postpetition agreements and are not governed by the arbitration provision in dispute. As such, they are to remain within the bankruptcy court's jurisdiction. To the extent that the remaining claims may be subject to the arbitration provisions, each of the core claims reviewed by the bankruptcy court is integral to the court's ability to preserve and facilitate the administration of the estate. Moreover, a number of the core proceedings at issue are premised on provisions of the Bankruptcy Code and fall within the bankruptcy court's exclusive jurisdiction. Enforcing arbitration of only some of these closely related claims would inherently conflict with one of the core

purposes of bankruptcy, that is, to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate [in the bankruptcy court] so that reorganization can proceed efficiently unimpeded by uncoordinated proceedings in other arenas." *See U.S. Lines,* at 640 (quoting *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 989 (2d Cir.1990)). Thus, given the complexity of the facts and the estate's interest in the disputed amounts due, the bankruptcy court did not abuse its discretion in finding that the "best interests of the estate will be served by litigation of all claims before this court so as to provide one forum to determine all issues." *Startec,* 292 B.R. at 255.

## IV. Conclusion

Based on the foregoing reasons, the court will affirm the bankruptcy court's order. A separate Order will be entered.