**PHOENIX AMERICAN LIFE INSURANCE COMPANY, Appellant,**

v.

**Deborah H. DEVAN, Trustee for Merry–Go–Round Enterprises, Inc., Appellee.**

**No. CIV. JFM–03–3667.**

United States District Court, D. Maryland.

April 12, 2004.

Morton A. Faller, Shulman, Rogers, Gandal, Pordy and Ecker, PA, Rockville, MD, for Appellant.

Cynthia L. Leppert, Jason M. St. John, Neuberger, Quinn, Gielen, Rubin and Gibber, PA, Joel I. Sher, Shapiro, Sher, Guinot and Sandler, Baltimore, MD, for Appellee.

## MEMORANDUM

MOTZ, District Judge.

This is an appeal from a Bankruptcy Court ruling that interest payments made by debtor, Merry–Go–Round Enterprises, on post-petition policy loans obtained from appellant Phoenix American Life Insurance Company ("Phoenix") are avoidable post-petition transfers under 11 U.S.C. § 549(a). I will affirm the ruling of the Bankruptcy Court.

### I.

Debtor filed for relief under the Bankruptcy Code on January 11, 1994. At that time, debtor was the owner of ten whole life insurance policies issued by Phoenix insuring the lives of ten of its executives. On September 2, 1997, Trustee Deborah H. Devan ("Trustee") filed a complaint against Phoenix seeking to avoid two post-petition policy loans[1] and two interest pay-

---

**1.** The first policy loan was made on September 1, 1994 in the amount of $1,412,238.49.

ments made on those policy loans[2]. On March 31, 1999, the Bankruptcy Court granted Phoenix's motion for summary judgment as to the policy loans, and denied its motion as to the payments of interest.

The Bankruptcy Court determined that the post-petition policy loans themselves were not "transfers of the property of the estate" within the meaning of 11 U.S.C. § 549(a) in accordance with a long line of cases establishing that what are commonly called "policy loans" are not, in fact, loans. *See, e.g., Bd. of Assessors of the Parish of Orleans v. New York Life Ins. Co.*, 216 U.S. 517, 522, 30 S.Ct. 385, 386, 54 L.Ed. 597 (1910)(holding that policy loans are distinct from ordinary loans because there is no obligation to repay and they do not give rise to a debtor-creditor relationship). Likewise, the court held that because policy loans entail mere withdrawal and retention by the debtor of his own property, they are not "transfers of the property of the estate." Since the policy loans were not transfers, they were not avoidable under 11 U.S.C. § 549(a).

The Bankruptcy Court further concluded that the interest payments on the policy loans, by contrast, were "transfers of the property of the estate" to Phoenix, and therefore might be avoidable under 11 U.S.C. § 549(a) if the transactions had not been authorized under the Bankruptcy Code or by the court. Accordingly, summary judgment on the two counts involving the payments of interest was denied.

Following a trial on November 3, 2003 on stipulated facts, the Bankruptcy Court found that the payments of interest on the policy loans were unauthorized transfers, and were therefore avoidable by the Trustee under 11 U.S.C. § 549(a). The court also awarded prejudgment interest on the amount of the judgment.

Phoenix contends that the interest payments on the post-petition policy loans taken out by debtor did not require authorization under the Bankruptcy Code or by the Bankruptcy Court, but that even if such authorization was required, sufficient authorization existed. Phoenix also contends that the Bankruptcy Court abused its discretion in awarding prejudgment interest.

## II.

■ Section 549(a) of the Bankruptcy Code states that "a trustee may avoid a transfer of property of the estate that occurs after commencement of the case, and ... that is not authorized under this title or by the court." 11 U.S.C. § 549(a). Phoenix argues that like the policy loans themselves, the payments of interest on the loans were not transfers because they were merely deductions in the amount of the insurer's ultimate obligation. I find the Bankruptcy Court's distinction between policy loans and the interest payments on those loans to be persuasive. Although both the policy loans and the payments of interest may have resulted in deductions in the amount of the insurer's ultimate obligation, the payments of interest, unlike the policy loans, involved "transfers of the property of the estate" to Phoenix (as opposed to withdrawal and retention of property of the estate by the debtor). As "transfers of the property of the estate," the payments of interest were

---

The second policy loan was made on September 1, 1995 in the amount of $291,361.48. In both instances, $191,485.79 of each total loan amount was applied to pay the annual premiums due in order to maintain the policies.

**2.** The first interest payment was made by the debtor on September 26, 1995 in the amount of $134,689.10. The second interest payment was collected by offset by Phoenix on October 3, 1996 in the amount of $169,827.32.

avoidable unless they were authorized under the Code or by the court pursuant to 11 U.S.C. § 549(a)(2)(B).

### III.

■ Phoenix argues that the payments of interest were authorized under 11 U.S.C. § 363(c)(1) because they were made "in the ordinary course of business." At the close of the trial, the Bankruptcy Court concluded that the payment of interest on post-petition policy loans did not qualify as "in the ordinary course" of debtor's business of operating retail clothing stores. While courts, and the parties to this appeal, disagree about the proper standard of review for decisions involving the ordinary course of business exception, the Fourth Circuit has adopted the clearly erroneous standard. *Harman v. First Am. Bank of Maryland (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 481–82 (1992).[3] Here, the Bankruptcy Court's determination was not clearly erroneous.

■ Although the Bankruptcy Code does not define what qualifies as "in the ordinary course of business," many courts have applied a two-pronged test formulated by the Ninth Circuit in *Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700 (9th Cir.1988).[4] The Fourth Circuit, while not explicitly adopting the *Dant & Russell*

test, has analyzed "ordinary course of business" questions in accordance with the Ninth Circuit's test, asking: 1) was the post-petition transaction common practice in the debtor's industry and 2) could a creditor reasonably expect the debtor to enter into such a transaction. *See Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Props. Ltd. P'ship)*, 99 F.3d 151, 158 (4th Cir.1996).

■ Phoenix bears the burden of proving that the transfer was made "in the ordinary course of business." Fed. R. Bankr.P. 6001. Even if Phoenix could have provided evidence showing that policy loans in the maximum allowable amount were common practice in its industry, it did not do so on the stipulated factual record. Moreover, Phoenix did not present evidence satisfying the second step, which includes a comparison of the debtor's pre-petition business activities with its post-petition transactions. *In re Dant & Russell*, 853 F.2d at 705. The record reflects that although Phoenix had taken out policy loans pre-petition in the amounts of the annual premiums that were due, it had never taken out policy loans in the amounts it did post-petition.[5] The payments of interest on these policy loans were not made in the "ordinary course of business."

3. Phoenix contends that a de novo standard should be applied because the court ruled on joint stipulation of facts and joint exhibits. This contention is without merit. *See, e.g., Thomas Havey & Co. v. Official Unsecured Creditors' Comm. of Annapolis Mall Motel Ltd. P'ship (In re Annapolis Mall Motel Ltd. P'ship)*, 1994 WL 149612 (D.Md. April 6, 1994) (applying clearly erroneous standard to bankruptcy court ruling based on undisputed facts).

4. The "ordinary course of business" exception relevant to § 549, which is derived from § 363(c)(1), has been interpreted somewhat

differently from the "ordinary course of business" defense to voiding preferences in § 547(c)(2). *See Huennekens v. Marx (In re Springfield Contracting Corp.)*, 154 B.R. 214, 225–26 (Bankr.E.D.Va.1993). It is the former exception that is discussed in this opinion.

5. Pre-petition, debtor had obtained policy loans to pay the annual policy premiums of $191,485.79 each due September 1, 1986, September 1, 1987 and September 1, 1998. The combined amount of the two post-petition policy loans was more than $1.5 million.

## IV.

Alternatively, Phoenix argues that the life insurance policies were executory contracts assumed by the debtor, and the interest payments were therefore authorized under 11 U.S.C. § 365. The Bankruptcy Court declined to address this argument on the grounds that the life insurance policy "certainly wasn't an assumed contract."[6] I agree with the Bankruptcy Court. The plain language of section 365 indicates that an executory contract may not be assumed without court approval. 11 U.S.C. § 365(a). *See In re A.H. Robins Co., Inc.*, 68 B.R. 705, 708–09 (Bankr.E.D.Va.1986). Phoenix concedes that the debtor did not even seek the approval of the Bankruptcy Court to assume the life insurance policies, and therefore the interest payments were not authorized under § 365.

## V.

Appellant also argues that the interest payments were authorized by the Bankruptcy Court because they were covered by an order entered by that court on April 11, 1994. That order authorized the debtor to "honor and maintain the supplemental retirement agreements described in the motion." Here, the Bankruptcy Court construed this order to cover interest payments on pre-petition policy loans whose existence was disclosed to the court at the time of the entry of the order, but found it did not extend to interest payments on post-petition policy loans obtained after its entry. There is no reason to disturb that interpretation. A bank-

ruptcy court is deemed to be in the best position to interpret its own orders, and thus a court's interpretation of its own order must be given substantial deference. *See, e.g., Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 941 (4th Cir. 1997).

## VI.

Finally, Phoenix contends that the trustee is not entitled to prejudgment interest because prejudgment interest is not appropriate where the claim is unliquidated, and where the defendant has raised a valid defense to a substantial part of the claim.[7] The decision to award prejudgment interest lies within the sound discretion of the bankruptcy judge. *Sigmon v. Royal Cake Co., Inc. (In re Cybermech, Inc.)* 13 F.3d 818, 822 (4th Cir.1994). Since this "[d]iscretion must be exercised according to the law," prejudgment interest "should be awarded unless there is a sound reason not to do so." *In Matter of Milwaukee Cheese, Wisconsin, Inc.*, 112 F.3d 845, 849 (7th Cir.1997). As to the liquidation issue, the bankruptcy court found, in my view correctly, that the claims were liquidated. Moreover, even assuming arguendo that the claims were unliquidated, this fact alone does not necessarily act as a per se bar to the award of prejudgment interest. *See Gray v. Travelers Ins. Co. (In re Neponset River Paper Co.)*, 219 B.R. 918 (Bankr.D.Mass.1998).

While courts may elect to deny prejudgment interest where the defendant has raised a valid defense to a substantial

6. Transcript of Judge Derby's Decision, November 3, 2003, p. 8.

7. The trustee contends that I should not consider the issue of prejudgment interest on appeal because Phoenix failed to raise it in its Rule 8006 Statement of Issues. Although the issue is separate from the other issues raised by Phoenix, I will exercise my discretion to

decide it. *See In re Startec Global Communications Corp.*, 300 B.R. 244, 249 (D.Md. 2003)("When an appealing party fails to raise an issue in its statement, the issue *may* be deemed waived, *at the district court's discretion* and if not inferable from those issues properly raised.")(*Emphasis added*).

part of plaintiff's claim, there is no prohibition on granting prejudgment interest under those circumstances. *See Sacred Heart Hosp. of Norristown v. E.B. O'Reilly Servicing Corp. (In re Sacred Heart Hosp. of Norristown)*, 200 B.R. 114, 119 (Bankr.E.D.Pa.1996). The award of prejudgment interest is intended to be compensatory, not punitive. *In Matter of Milwaukee Cheese*, 112 F.3d at 849. Prejudgment interest is appropriate because the creditor "has no more right to keep the interest accrued on the [award] than it has to keep the principal amount of the avoidable preference itself." *In re Cybermech, Inc.*, 13 F.3d at 822.

Against the background of these principles, I find that the Bankruptcy Court did not abuse its discretion in awarding prejudgment interest.

For the foregoing reasons, the ruling of the Bankruptcy Court is affirmed. A separate order to that effect is being entered herewith.